**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JL BEVERAGE COMPANY, LLC,
*Plaintiff-Counter-Defendant-Appellant*,

v.

JIM BEAM BRANDS CO.; BEAM SUNTORY INC.,
*Defendants-Counter-Plaintiffs-Appellees.*

No. 13-17382

D.C. No.
2:11-cv-00417-MMD-CWH

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted January 8, 2016
San Francisco, California

Filed July 14, 2016

Before: J. Clifford Wallace, John T. Noonan,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

### Trademark

The panel reversed the district court's summary judgment in favor of Jim Beam Brands Co. on claims of trademark infringement, false designation of origin, and unfair competition brought under the Lanham Act and Nevada state law by JL Beverage Co., which sells a competing line of flavored vodkas.

The panel held that the district court erred in failing to place the burden of proof on Jim Beam Brands, the moving party; failing to view the evidence in the light most favorable to JL Beverage; and never analyzing whether a genuine dispute of material fact existed.

The panel held that genuine issues of material fact remained as to the likelihood of consumer confusion between plaintiff's registered "Johnny Love Vodka" and "JL Lips" marks and defendant's "Pucker Vodka" logo. A reasonable fact-finder could conclude that plaintiffs' marks had conceptual strength and either did or did not have commercial strength, that the parties' products were related flavored-liquor products sold to the same customers and distributors, that the products were similar, that consumers purchasing the products were not likely to exercise a high degree of care in distinguishing between the two, and that Jim Beam was aware of JL Beverage's trademarks prior to rolling out its Pucker

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Vodka line. The panel therefore reversed and remanded for further proceedings consistent with its opinion.

## COUNSEL

Colin Christopher Holley (argued), Jeremy T. Katz, and George L. Hampton, Hampton Holley, Corona Del Mar, California; Ryan R. Gile, Weide & Miller, Las Vegas, Nevada; for Plaintiff-Counter-Defendant-Appellant.

Mark J. Liss (argued), Claudia Stangle, and Angela Baylin, Leydig, Voit & Mayer, Chicago, Illinois; Jonathan Fountain and Michael McCue, Lewis Roca Rothgerber, Las Vegas, Nevada; for Defendant-Counter-Plaintiff-Appellee.

## OPINION

WALLACE, Senior Circuit Judge:

JL Beverage Company, LLC (JL Beverage) appeals from the district court's summary judgment in favor of Jim Beam Brands Company (Jim Beam) on JL Beverage's trademark infringement, false designation of origin, and unfair competition claims. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because genuine issues of material fact remain, we reverse and remand for further proceedings consistent with this opinion.

I.

This dispute centers on two alcoholic beverage manufacturers, JL Beverage and Jim Beam, which sell

competing lines of flavored vodkas. JL Beverage manufactures, sells, and promotes a line of flavored and unflavored vodka called "Johnny Love Vodka." Restaurant owner and bartender Johnny Metheny created the Johnny Love line of vodkas around 2003–2004. To promote the new line, Metheny enlisted a friend to design a unique logo, and Metheny quickly adopted the proposed lips image. He believed the lips were "definitely sexy" and could "impart the flavor" of the vodka if colored to denote the flavor in the bottle of vodka. The lips were colored red for unflavored, purple for passionfruit, yellow for aloha, orange for tangerine, and green for apple. In 2005, Metheny sold the Johnny Love Vodka line to JL Beverage.

Since July 2005, JL Beverage has used the following two trademarks in connection with its sale of the Johnny Love Vodka products:





The "JLV Mark"
USPTO Registration No. 2,986,519
(registered August 16, 2005)

The "JL Lips Mark"
USPTO Registration No. 4,044,182
(registered October 15, 2011)

The first mark, called "Johnny Love Vodka" or the "JLV mark," was registered on August 16, 2005, with the United States Patent and Trademark Office (USPTO) as Registration No. 2, 986,519 in International Class 33-Vodka. JL Beverage registered the second mark, called the "JL Lips Mark," with

USPTO on October 25, 2011 under Registration No. 4,044,182 in International Class 33-Distilled Spirits. Both images appear on the Johnny Love line of vodkas and flavored vodkas:



The JL Lips Mark is imprinted on the top of the bottle and on the back label, and is incorporated into the JLV Mark as the "o" in "Love." The mark color on the back label also corresponds to the flavor in the bottle:



The Johnny Love Vodka bottles come in four different sizes.

After acquiring Johnny Love Vodka and the two trademarks, JL Beverage expended substantial resources developing, advertising, and marketing Johnny Love Vodkas throughout the United States. JL Beverage at one point had distributors in twenty states, and it holds a Federal Basic Alcohol Permit for national use. JL Beverage's nationwide marketing campaign included print-media advertisements, third-party publications, and the development of its own website. Although in recent years its sales have been substantially reduced, its overall marketing efforts resulted in millions of dollars in sales of Johnny Love products throughout the country.

In 2010, Jim Beam entered the flavored vodka market with a new line of flavored vodkas called "Pucker Vodka." Jim Beam purchased the Pucker brand from Koninklijke De Kuyper, B.V. (KDK). KDK had marketed a line of liqueurs and cordials under the "Pucker" brand, and, in its original design, used lips images in connection with its labeling and logos. After Jim Beam purchased KDK's flavored vodka line, it decided to redesign and rebrand Pucker to "expand on the equity of the Pucker brand and lips" into flavored vodka." To that end, Jim Beam hired the design firm of Libby, Perszyk, Kathman, Inc. (LPK) to independently "develop a new and unique look and feel" for its Pucker vodka product that would communicate "[i]ntense flavor and [i]ntense fun" in connection with the brand.

The redesigned Pucker Vodka bottle contains a prominent lips image on the center of its label. Like the Johnny Love Vodka labels, the lips image varies in color depending on the vodka flavor in the bottle:



Jim Beam instructed LPK to use both the Pucker name and lips as part of any design it developed for Pucker's new label. After LPK provided Jim Beam with several possible design options, Jim Beam's project team made final selections of the proposed Pucker Vodka products and sent their choices to the company's legal department for clearance. Jim Beam instructed its legal counsel to perform a clearance search for lips designs. The legal department found 40 references to lips for alcohol-related products. JL Beverage's JLV Mark was in the search report. Although JL Beverage's Lips Mark is incorporated into the JLV Mark, it did not separately appear in the search report because JL Beverage had not yet filed its registration application for the standalone lips mark. Based on its research, Jim Beam's legal department approved the Pucker brand's bottle shape and label.

Emily Johnson, a former Jim Beam employee, worked for Jim Beam as a financial and business analyst during the development of the Pucker Vodka product. Prior to her employment at Jim Beam, Johnson met JL Beverage's

president, T.J. Diab, and learned about JL Beverage's products. In March 2010, during her employment at Jim Beam, she sent an email to Diab from her home account, which stated "I was reading through some reporting on vodka flavors and saw Aloha on the list!"

Jim Beam attempted to register the Pucker lips design around March 2011, filing applications for trademarks in the bottle and cap, the stylized Pucker wording, and the lips design. After the registration process began, an official in Jim Beam's legal department discovered that the lips mark that LPK had selected to be featured in the center of the Pucker Vodka label was "stock art" from iStockphoto LP. Because Jim Beam could not claim ownership in the lips image, it withdrew its USPTO application for the lips design.

Prior to withdrawal, Jim Beam also received notice from the USPTO that it had rejected Jim Beam's registration application. In the rejection letter, the USPTO cites JL Beverage's Lips Mark as a basis for refusing the registration.

Jim Beam officially relaunched its newly-designed Pucker Vodka products in March and April 2011. Jim Beam advertises Pucker Vodka products nationally through television and cable commercials, digital advertising, print advertisements in national magazines, and in-store and on-premise promotions at restaurants and bars.

Shortly after the Pucker Vodka launch, Shaun Robertson, a JL Beverage broker for Johnny Love Vodka, began receiving phone calls and messages concerning the similarities between the two vodkas. Robertson provided, in a declaration to the court, a summary of in-person conversations, text messages, and phone calls he had with

friends and acquaintances in which those individuals confused a different flavored vodka product for Johnny Love.

JL Beverage delivered a cease and desist letter to Jim Beam on March 18, 2011. Jim Beam responded that it did not believe its Pucker Vodka logo infringed JL Beverage's mark. JL Beverage filed a complaint in the United States District Court for the District of Nevada in July 2011, alleging trademark infringement, false designation of origin, and unfair competition. JL Beverage moved for preliminary injunction, which the district court denied. JL Beverage and Jim Beam then filed cross-motions for summary judgment. The district court denied JL Beverage's motion and granted Jim Beam's motion. The district court subsequently denied JL Beverage's motion for reconsideration.

## II.

We review the district court's summary judgment de novo, including its decision on cross-motions for summary judgment. *Szajer v. City of L.A.*, 632 F.3d 607, 610 (9th Cir. 2011); *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether there are any genuine issues of material fact. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). We review the district court's conclusions of law de novo, and its factual findings for clear error. *Id.*; *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1195–96 (9th Cir. 2009). "[W]here it is unclear whether the district court relied on proper law, we may vacate the judgment and remand with instructions to apply the correct legal standard." *Lahoti*, 586 F.3d at 1196 (citing *United States v. Pintado-Isiordia*, 448 F.3d 1155, 1158 (9th Cir. 2009)).

This appeal turns in large part on whether the district court correctly applied the standard for deciding a motion for summary judgment. The success of each of JL Beverage's claims turns on the same issue: whether there was a genuine dispute of material fact as to the likelihood of consumer confusion. JL Beverage asserts the following claims: (1) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (3) Nevada common law trademark infringement and unfair competition. The likelihood of consumer confusion is central to each claim. *See* 15 U.S.C. § 1114(1)(a) (providing that a person is liable for trademark infringement where he or she "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use *is likely to cause confusion*, or to cause mistake, or to deceive") (emphasis added); *A.L.M.N. v. Rosoff*, 104 Nev. 274, 277, 281 (1988) (holding that Nevada's common law trademark infringement and unfair competition claims mirror their federal counterparts, and plaintiffs need only prove that (1) they own a protectable right in the marks, and (2) the defendant's use of the mark is likely to "confuse, cause mistake, or deceive an 'appreciable number' of reasonable customers" with respect to the marks).

In its summary judgment ruling, the district court used the standard applicable to preliminary injunctions instead of the standard for summary judgment rulings. The district court, having already ruled on JL Beverage's motion for preliminary injunction, continued to apply the standard it used at that stage when it ruled on the parties' cross-motions for summary judgment. In its summary judgment order, the district court

concluded: "[f]or reasons articulated in the Order denying the Preliminary Injunction, the Court determines that no issues of material fact remain which could provide Plaintiff a basis for success on any of its claims. Defendant's Motion for Summary Judgment is accordingly granted."

The district court's failure to apply the correct standard is significant: on motion for preliminary injunction, the plaintiff–as the moving party–bears the burden of establishing the merits of its claims. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In contrast, on a defendant's motion for summary judgment, not only does the movant carry the burden of establishing that no genuine dispute of material fact exists, but the court also views the evidence in the light most favorable to the non-moving party. *See, e.g.*, *Olsen*, 363 F.3d at 922. The defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

But in its summary judgment order, the district court ignored the important distinctions between the two standards, and, when ruling on the defendant's motion for summary judgment, ultimately placed the burden on JL Beverage, the plaintiff, to prove the merits of its claims. Moreover, it failed to view the evidence in the light most favorable to JL Beverage, and never analyzed whether a genuine dispute of material fact existed.

While the district court must apply the correct standard in any case, the necessity to do so is heightened in cases turning on the likelihood of consumer confusion. Because the determination is based on a non-exhaustive, multi-factor,

fact-intensive inquiry, we have cautioned against granting summary judgment in these cases. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) ("Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored"); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006) ("Because the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage"); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir.2002) ("We have cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record"), *superseded by statute on other grounds*, 15 U.S.C. § 1125. Where, as here, conflicting facts render it unclear whether there was a likelihood of consumer confusion, summary judgment is inappropriate.

## III.

To determine whether a likelihood of consumer confusion exists, our court relies on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003). The factors are non-exhaustive and

applied flexibly; the *Sleekcraft* factors are not intended to be a "rote checklist." *Rearden*, 683 F.3d at 1209. "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id*.

Utilizing the eight-factor test, plaintiffs may establish a likelihood of consumer confusion as a result of either (1) forward confusion, or (2) reverse confusion. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). JL Beverage alleges both forward and reverse trademark confusion. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Id*. Reverse confusion, on the other hand, "occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Id*.

In its order denying a preliminary injunction, the district court determined that factors two, five, and six of the *Sleekcraft* test favor JL Beverage and a finding of a likelihood of confusion. Jim Beam does not dispute that these factors favor JL Beverage. Rather, Jim Beam contends that there is no genuine dispute of material fact concerning factors one, three, four, and seven, and, accordingly, no genuine dispute of material fact concerning a likelihood of confusion. So the issue before us is whether, viewing the evidence in the light most favorable to JL Beverage, there is a genuine dispute of material fact concerning whether factors one, three, four, and seven favor JL Beverage, and, accordingly, a genuine dispute of material fact as to the likelihood of consumer confusion.

A.

JL Beverage contends that there is a factual dispute as to the strength of its standalone lips logo (Lips Mark) and composite mark consisting of the lips logo and the words "Johnny Love Vodka" (JLV Mark). We examine the strength of JL Beverage's mark to determine the scope of trademark protection to which the mark is entitled. *Surfvivor*, 406 F.3d at 631 (citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002)).  As the uniqueness of the mark increases, so too does the degree of protection. *Id*.  A mark's strength is "evaluated in terms of its conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1207 (9th Cir. 2000).

A mark's conceptual strength "depends largely on the obviousness of its connection to the good or service to which it refers." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1032–33 (9th Cir. 2010). To determine a mark's conceptual strength, we classify a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and "trigger the highest degree of trademark protection." *Surfvivor*, 406 F.3d at 631. In the middle of the spectrum are suggestive marks, which suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product. *Fortune Dynamic*, 618 F.3d at 1033, (citing *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010)). Descriptive and generic marks, at the

other end of the spectrum, are the two weakest categories. Descriptive marks define a particular characteristic of the product in a way that does not require any imagination, while generic marks describe the product in its entirety and are not entitled to trademark protection. *Surfvivor*, 406 F.3d at 632.

After identifying whether a mark is generic, descriptive, suggestive, arbitrary, or fanciful, the court determines the mark's commercial strength. *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc*., 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other grounds by Eclipse Assocs. Ltd. v. Data Gen. Corp*., 894 F.2d 1114, 1116 n.1 (9th Cir. 1990). Commercial strength "is based on actual marketplace recognition." *Network Automation*, 638 F.3d at 1149 (citation omitted). As a result, advertising expenditures, which increase marketplace recognition, offer evidence of commercial strength and "can transform a suggestive mark into a strong mark." *Id*. (citation omitted).

JL Beverage has alleged both forward and reverse confusion claims. The JLV and Lips Marks' conceptual and commercial strength plays a different role in each type of claim. "In the usual [forward] infringement case," the court "determine[s] whether the junior user is palming off its products as those of the senior user." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129–30 (9th Cir. 1998). Consequently, for JL Beverage's claim of forward confusion, we evaluate the conceptual and commercial strength of the JLV and Lips Marks to determine whether a customer interested in purchasing vodka would be confused into thinking that JL Beverage produces Jim Beam's Pucker Vodka, or that Johnny Love Vodka is the same product as Pucker Vodka. In contrast, in claims of reverse confusion, the question is "whether consumers doing business with the

senior user might mistakenly believe that they are dealing with the junior user." *Id.* at 1130. As a result, the court evaluates the conceptual strength of JL Beverage's marks and compares it to the commercial strength of Jim Beam's mark. *Id.* at 1130 n.5.

1.

We turn first to analyzing the JLV and JL Lips Marks' conceptual strength. Jim Beam contends the JLV Mark is descriptive because it contains the word "vodka," and therefore describes the product. Jim Beam, however, ignores the color-coordinated feature of the JLV Mark. Instead of just labeling the bottle "vodka," the JLV Mark has color-coordinated lips that match a particular flavor. Reasonable jurors, viewing the Mark in its entirety, could conclude that the Mark is suggestive because they must use their imaginations to connect the color of the lips to the vodka flavor.

Jim Beam also contends that the Lips Mark has weak conceptual strength. Jim Beam overlooks that the salient feature of the Lips Mark–the lips–have no commonly understood connection with the alcohol product it represents. As a result, a fact-finder could reasonably conclude that the Lips Mark is arbitrary, garnering the highest degree of trademark protection.

Jim Beam counters that the Lips Mark is part of a "crowded field" of similar lips logos, and thus there is less likelihood of consumer confusion. Jim Beam argues that JL Beverage waived its right to contest this issue on appeal because it failed to raise it before the district court. However, because the district court considered this issue, it is not

waived on appeal. *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007) ("[E]ven if a party fails to raise an issue in the district court, we generally will not deem the issue waived if the district court actually considered it"). Returning to the issue, when "the marketplace is replete with products using a particular trademarked" symbol, it "indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will *not* be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). Jim Beam has provided several examples of lips marks used on product labels for different types of alcohol. The lips logos Jim Beam presents, however, lack the crucial feature of the Lips Mark: unlike the Lips Mark, they are not color-coordinated by flavor for an entire line of flavored vodkas.

In addition, the vast majority of the products on which lips are used are not liquor products, but rather beer, wine, or non-alcoholic beverages. In that regard, the parties dispute how broadly the relevant market should be characterized for the purposes of evaluating whether the field is crowded with lips uses. In other words, there are genuine disputes of material fact as to what constitutes the relevant "field," whether the field is "crowded," and the effect of the foregoing on the likelihood of confusion analysis. *See also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 420–21 (6th Cir. 2012) (agreeing with the district court that, in a trademark dispute between a bourbon maker and a tequila maker, the relevant market was not "all distilled spirits," but rather a narrower field); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159–60 (9th Cir. 1963) (calling, in a pre-*Sleekcraft* case, scotch whiskey and beer "related" for purposes of the likelihood of confusion). Perhaps most importantly, the impact of a

"crowded field" of lips logos is not dispositive in determining a mark's conceptual strength; rather, it is but one factor a court considers in evaluating the overall strength of the mark. *See Entrepreneur Media*, 279 F.3d at 1143–44.

Here, the district court failed to construe the evidence concerning the JLV and Lips Marks' conceptual strength in the light most favorable to JL Beverage to determine whether a genuine dispute of material fact exists. Had the district court applied the correct standard, it may well have concluded that the Marks' conceptual strength placed the Marks in a category that warranted a higher degree of protection.

2.

We now turn to the second step of our inquiry: the Marks' commercial strength. Jim Beam argues that JL Beverage has a "relatively weak" market presence, while it maintains a "relatively strong" market presence.

JL Beverage concedes that Jim Beam has a strong market presence. JL Beverage correctly points out, however, that this finding supports its reverse confusion claim: evidence that Jim Beam's junior mark, the Pucker Vodka lips, is well-known suggests a greater likelihood that consumers will confuse JL Beverage's senior mark for the Pucker Vodka line. *See Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n. 2 (9th Cir. 2000) ("In a reverse confusion case . . . the inquiry focuses on the strength of the junior mark because the issue is whether the junior mark is so strong as to overtake the senior mark"). The national recognition of the Jim Beam mark increases the likelihood that consumers will believe they are doing business with Jim Beam, not JL Beverage, when they purchase Johnny Love Vodka. *See Cohn v.*

*Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (explaining that, in reverse confusion cases, the junior mark holder's commercial strength "creates a potential that consumers will assume that" the senior holder's mark refers to the junior holder's mark, "and thus perceive that the businesses are somehow associated").

To support its forward confusion claim, JL Beverage argues in the alternative that it too has a strong market presence. JL Beverage submitted evidence that it sold its products nationally, and that it spent considerable resources on marketing through print media, third-party publications, and internet advertising.

Viewing the evidence in the light most favorable to JL Beverage, there is a genuine dispute of material fact as to the commercial strength of JL Beverage's Johnny Love Vodka in the marketplace. Moreover, the determination as to whether the evidence demonstrates that JL Beverage has robust commercial strength will lend support to JL Beverage whatever the fact-finder decides, as JL Beverage has raised both forward and reverse confusion claims.

## B.

We now address factor three of the *Sleekcraft* test, the similarity of the marks. JL Beverage contends that the similarity of shape and color in the competing lips designs renders the marks similar.

Similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com*, 202 F.3d at 1205. Three principles guide a court in determining whether marks are similar. *Fortune Dynamic*,

618 F.3d at 1032. First, "similarity is best adjudged by appearance, sound, and meaning." *Id.* (citation and alteration omitted). "Second, the marks must be considered in their entirety and as they appear in the marketplace." *Id.* (citation omitted). "Third, similarities are weighed more heavily than differences." *Id*. (quoting *GoTo.com*, 202 F.3d at 1206).

In viewing the competing JL Beverage and Jim Beam marks in their entirety, there are numerous similarities in their appearance: both have puckered, human lips as the focal point of their design; the lips have a similar angle and shape; and the lips are color-coordinated with the flavor of the vodka. In addition to the photos of the marks, which suggest a similar appearance, JL Beverage offered evidence from officials who concluded that the marks are similar. First, JL Beverage relies upon the Chief Administrator of the North Carolina Alcoholic Beverage Control Commission's (NCABCC) statement that the Jim Beam mark "looks a lot like" JL Beverage's design. Second, it provided evidence that a USPTO Examiner stated, in his initial review of Jim Beam's application to register its lips, that the Jim Beam and JL Beverage "marks are highly similar lip designs oriented at a similar angle. Consequently, the marks create an overall similar commercial impression." The entirety of the marks' appearances, coupled with documented statements stating that the marks appear similar, establishes a genuine dispute of material fact concerning their similarity.

In response, Jim Beam first argues that the marks are "dramatically different" because the bottle shapes are distinct, the product labeling is not similar, and both products prominently feature their house marks. While a fact-finder may ultimately conclude that these factors render the marks dissimilar, Jim Beam's competing factual analysis does

nothing to alleviate the existence of a dispute of material fact concerning the marks' similarity.

Jim Beam next contends that the USPTO Examiner's statement is unpersuasive as it was only a preliminary assessment for determining whether its lips design would be trademarked. Regardless of whether the statement was the result of a preliminary assessment, it suggests that others found the marks similar.

C.

The fourth factor of the *Sleekcraft* test looks to evidence of actual consumer confusion. *Surfvivor*, 406 F.3d at 633. JL Beverage contends that there is evidence of actual consumer confusion through Shaun Robertson, a manager of one of JL Beverage's product brokers, who submitted a declaration with an attached email in which he lists instances of confusion about which individuals informed him. The district court, although it did not ultimately rule on the admissibility of the statements in Robertson's declaration, concluded in its preliminary injunction order that factor four favored neither party because the evidence was hearsay, and unreliable, and because many of the cited instances actually showed a lack of consumer confusion.

Robertson's declaration presents a smattering of statements that JL Beverage alleges serve as evidence of actual consumer confusion. For instance, Robertson reported that a woman named Missy Giblin contacted Robertson stating that she saw JL Beverage's new commercial for Johnny Love Vodka, when in fact JL Beverage was not running commercials at that time; a man named Sam Mills told Robertson that he mistakenly purchased Pucker Vodka,

having thought it was Johnny Love Vodka; and Micheal C. Herring, the Chief Administrator of the NCABCC, sent Robertson an email that stated "see attached. This is Jim Beam's new line of vodka. Looks a lot like Johnny Love."

Jim Beam argues, and the district court correctly concluded, that the statements contained in Robertson's declaration and email are hearsay. *See Japan Telecom., Inc. v. Japan Telecom, Am. Inc*., 287 F.3d 866, 874 n.1 (9th Cir. 2002) (concluding that statements made by the declarant that the declarant knows of others who were confused by similar trademarks are inadmissible hearsay). Almost all of the instances that Robertson recounts are statements that he gathered from others via email, telephone calls, or text messages. At times, Robertson even fails to specify where or how some of the alleged conversations took place.

We note, however, that at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). But here, JL Beverage has not argued that the hearsay declarants would be available to testify at trial, or that its hearsay evidence would be admissible at trial in some other form. We address, therefore, only the district court's conclusion that the statements discussed in Robertson's declaration are hearsay, not subject to an exception.

In addition to being hearsay, some of the reported statements were provided to Robertson by friends and acquaintances. For example, Diab testified that while he personally did not know Missy Giblin, he believed that she was a friend of Robertson and his co-worker. In addition, text

messages Robertson received on his personal cell phone, which suggested consumer confusion, showed that Robertson and the sender had a high level of familiarity, as the messages contained phrases such as "hey babes," "dude," and "call me back hun." Evidence from such "partial source[s] possesses very limited probative value." *Filipino Yellow Pages v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999).

JL Beverage acknowledges that the statements submitted in Robertson's declaration are hearsay, but alleges that at least some of the statements are admissible under the "state of mind" exception to the hearsay rule. Federal Rule of Evidence 803(3) allows admission of "[a] statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition."

To support its argument, JL Beverage relies heavily on *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (*Lahoti II*), which admitted hearsay statements regarding consumer confusion under the state of mind exception. In *Lahoti II*, the court admitted testimony from Vericheck company representatives who received telephone calls from confused customers who could not find information about Vericheck on the website www.Vericheck.com, which the defendant had created. *Id*. The statements in Robertson's declaration differ from the testimony in *Lahoti II* in two important ways. First, many of the alleged conversations Robertson had were not with customers calling because they were currently confused and seeking information about JL Beverage; rather, the individuals were reporting, after the fact, that they had mistaken two products. Second, unlike the spontaneous calls of confusion that company representatives received in *Lahoti II*, Robertson received some of the reports of confusion from possible biased sources: his friends and

acquaintances. Accordingly, JL Beverage's reliance on *Lahoti II* is of little help.

Finally, some of the statements included in the declaration, including Herring's, state only that the Johnny Love Vodka and Pucker Vodka products "look alike." Statements that the products look alike do not necessarily demonstrate consumer confusion: consumers who identify products as "looking alike" recognize the products' similarities, but the question is whether they have mistaken one product for another.

Whether JL Beverage may be able to supplement its evidence of actual consumer confusion through further discovery is not known. However, as it now stands, this evidence of actual consumer confusion does not weigh in JL Beverage's favor. Nevertheless, as we have previously held, "[b]ecause of the difficulty in garnering" evidence of actual confusion, "the failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 353.

D.

We turn last to factor seven of the *Sleekcraft* test, which assesses the defendant's intent in selecting the mark. JL Beverage contends that Jim Beam knew of the registered JLV and Lips Marks, yet proceeded to use a colored lips logo on its Pucker Vodka bottles.

Factor seven favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Comnc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999). When "an alleged infringer knowingly

adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).

JL Beverage has set forth evidence to create a genuine dispute of material fact as to whether Jim Beam knew of JL Beverage's registered trademarks, yet proceeded to use its colored-lips logo anyway. JL Beverage provided the following: (1) as a result of a trademark search that Jim Beam's legal team performed, Jim Beam was aware of JL Beverage's JLV trademark; (2) Jim Beam employee Emily Johnson, who worked with a Pucker flavored-vodka team, was aware of Johnny Love Vodka prior to joining Jim Beam; and (3) Jim Beam continued its nationwide rollout of Pucker Vodka even after the USPTO denied its trademark application; as a basis for that denial, the USPTO identified the similarity of Jim Beam's proposed marks to JL Beverage's.

Jim Beam contends that we should nonetheless conclude that factor seven weighs in its favor because there is no evidence that Jim Beam intended to infringe JL Beverage's trademarks. Unfortunately for Jim Beam, "[a]bsence of malice is no defense to trademark infringement." *Dreamwerks*, 142 F.3d at 1132 n.12. The relevant inquiry is not Jim Beam's intent, but rather whether it adopted the colored lips logo with the knowledge that the mark already belonged to JL Beverage. Viewing the evidence in the light most favorable to JL Beverage, there is a dispute of material fact concerning what Jim Beam knew when it launched the Pucker Vodka line.

IV.

In ruling on the parties' cross-motions for summary judgment, the district court does not appear to have viewed the evidence in the light most favorable to JL Beverage and to determine whether a genuine dispute of material fact existed. Balancing the *Sleekcraft* factors as a whole, we conclude there is a genuine dispute of material fact as to the likelihood of consumer confusion. A reasonable fact-finder could conclude that: the JLV Mark has conceptual strength because the Mark's salient feature, the color-coordinated lips, requires consumers to use their imagination to connect the color to the vodka flavor; the Lips Mark has conceptual strength because the lips have no commonly understood connection to the vodka product; Johnny Love Vodka does or does not have commercial strength (because a finding of either would support one of JL Beverage's theories of confusion–reverse or forward); Johnny Love and Pucker Vodka are related flavored-liquor products sold to the same customers and distributors; the products are similar given their use of color-coordinated, puckered human lips as the focal point of their bottle designs; consumers purchasing the vodka products are not likely to exercise a high degree of care in distinguishing between the two; and Jim Beam was aware of JL Beverage's trademarks prior to rolling out its Pucker Vodka line. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.