**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NAOMI J. AYLWARD, individually and as personal representative for the Estate of Philip Aylward, *Plaintiff-Appellant*, | No. 20-55653 |
| v. | D.C. No. 3:18-cv-00494- WQH- MDD |
| SELECTHEALTH, INC., a Utah corporation, DBA SelectHealth, *Defendant-Appellee*, | ORDER AND AMENDED OPINION |
| and | |
| DOES, 1–25 inclusive; JEFF AYLWARD, an individual; TODD AYLWARD, an individual, *Defendants.* | |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted May 10, 2021
San Francisco, California

Filed April 13, 2022
Amended May 27, 2022

Before: J. Clifford Wallace and Daniel P. Collins, Circuit
Judges, and Jed S. Rakoff,* District Judge.

Order;
Opinion by Judge Wallace

---

## SUMMARY**

### Medicare

The panel affirmed the district court's summary
judgment in favor of SelectHealth, Inc., a health insurance
benefits company, in a case involving disputed benefits
under a Medicare Advantage ("MA") plan governed by Part
C of Title XVIII of the Social Security Act ("SSA"),
popularly known as the Medicare Act.

Naomi Aylward filed a lawsuit in state court, alleging
state law claims arising from SelectHealth's administration
of her deceased husband's MA plan and his death. Under
Part C of the Medicare Act, beneficiaries can enroll in an
MA plan and receive Medicare benefits through private MA
organizations instead of the government. SelectHealth
removed the action to federal court on the basis of diversity
jurisdiction.

---

* The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

** This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

The panel first considered whether plaintiff's claims must be exhausted through the Medicare Act's administrative review scheme. Section 205(h) of Title II of the SSA makes the judicial review provided in § 205(g) the exclusive means for reviewing administrative determinations under Title II. The panel held that Section 1872 of Title XVIII of the SSA provides that § 205(h) is applicable to cases under the Medicare Act to the same extent as in cases under Title II. The panel concluded that enrollees in an MA plan must likewise first exhaust their administrative remedies before seeking judicial review of a claim for benefits.

The panel next considered whether plaintiff exhausted her administrative remedies. The panel concluded that plaintiff's claims were not subject to the SSA's exhaustion requirement because the dispute was not whether plaintiff's husband received a favorable outcome from the internal benefits determination process but rather whether he should have received the services earlier. This is not an issue that has an administrative remedy under § 1852(g)(5). Claims outside the administrative process are not ones that can give rise to the sort of administrative decision that triggers applicability of § 205(h) and, in turn, § 205(g).

The panel next considered whether the Medicare Act preempted plaintiff's state law claims. First, the panel held that plaintiff's claim that SelectHealth breached a duty to process timely her husband's October 7, 2016, appeal was expressly preempted. Because the standards established under Part C expressly prescribe the relevant duties of MA plans with respect to when expedited treatment is required and what timeframes apply, those standards supersede any state law duty that would impose obligations of MA plans on the same subject. Accordingly, to the extent plaintiff's state

law claims depend on the timeliness of SelectHealth's processing of Mr. Aylward's appeal, the panel held that the Medicare Act preempted those claims, whether or not they would be inconsistent with federal regulations. Second, the panel held that the Medicare Act also preempted plaintiff's claims based on SelectHealth's alleged breach of duty to investigate properly Mr. Aylward's August 23, 2016, preauthorization request for consultation and testing at St. Joseph's Hospital and Medical Center in Phoenix, Arizona. The panel held this second asserted duty was essentially identical to the first alleged duty: a duty to process the claim for benefits, and receive a favorable decision, more quickly. For the same reasons discussed for the October 7, 2016, appeal, the panel concluded that a state law claim based on a duty to process claims for benefits in a timely manner was preempted by the Part C regulations that set forth the timeframes for initial determinations and reconsideration decisions.

Because the Medicare Act's express preemption provision, 42 U.S.C. §1395w-26(b)(3), barred plaintiff's state law claims, the panel affirmed the district court's summary judgment in favor of SelectHealth.

---

## COUNSEL

Eric S. Rossman (argued) and Erica S. Phillips, Rossman Law Group PLLC, Boise, Idaho; Lenden F. Webb, Webb Law Group APC, Fresno, California; for Plaintiff-Appellant.

Alan C. Bradshaw (argued) and Christopher M. Glauser, Manning Curtis Bradshaw & Bednar PLLC, Salt Lake City, Utah, for Defendant-Appellee.

**ORDER**

The opinion in *Aylward v. SelectHealth, Inc.*, 31 F.4th 719 (9th Cir. 2022), is amended as follows:

On page 728, **replace** <Because the only claims that can avoid Part C's administrative channeling are those that—as is the case here—were successfully resolved in favor of the claimant> **with** <Because Mr. Aylward's claim was successfully resolved in his favor>.

The amended version is filed concurrently with this order.

The panel has unanimously voted to deny the petition for panel rehearing. Judge Collins voted to deny the petition for rehearing en banc, and Judges Wallace and Rakoff so recommend. The full court has been advised of the petition for rehearing and rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED**. No further petitions for panel rehearing or rehearing en banc will be considered. *See* Gen. Order 5.3(a).

**OPINION**

WALLACE, Circuit Judge:

Naomi Aylward (Mrs. Aylward) filed a lawsuit in state court against SelectHealth, Inc. (SelectHealth), a health insurance benefits company, and asserted state law claims arising from SelectHealth's administration of her deceased husband Philip Aylward's (Mr. Aylward) Medicare Advantage plan and his death. Mrs. Aylward appeals from the district court's summary judgment in favor of SelectHealth. We have jurisdiction pursuant to 8 U.S.C. § 1291. We review de novo the district court's summary judgment. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1104 (9th Cir. 2016). We review de novo whether a federal statute preempts state law claims. *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010). Because the Medicare Act preempts Mrs. Aylward's state law claims, we affirm.

I

A

This case involves benefits under a Medicare Advantage (MA) plan governed by Part C of Title XVIII of the Social Security Act (SSA), popularly known as the Medicare Act. The Medicare Act establishes a federally subsidized health insurance program for elderly and disabled persons administered by the Department of Health and Human Services (the Department). 42 U.S.C. § 1395c. The Secretary of the Department of Health and Human Services (the Secretary) delegates the administration of the Medicare Act to the Centers for Medicare and Medicaid Services (CMS), an agency housed within the Department. In 1997, Congress enacted Part C of the Act, creating the Medicare

Advantage program. 42 U.S.C. §§ 1395w-21–29. Under Part C, beneficiaries can enroll in an MA plan and receive Medicare benefits through private MA organizations instead of the government. *Id.*

B

In August 2014, a doctor diagnosed Mr. Aylward "with pulmonary fibrosis, likely" idiopathic pulmonary fibrosis (IPF).[1] In the fall of 2015, Mr. Aylward enrolled in a SelectHealth Advantage insurance plan (the Plan) with an effective date of January 1, 2016. SelectHealth Advantage plans, including the Plan, are MA plans administered by SelectHealth. The Plan covered "medically necessary" care, and the member handbook states that "'[m]edically necessary' means that the services, supplies, or drugs are needed for the prevention, diagnosis, or treatment of your medical condition and meet accepted standards of medical practice." With respect to organ transplants, the member handbook states that Mr. Aylward's physician was required to obtain prior authorization from SelectHealth.

The member handbook outlines the process by which SelectHealth would issue "organization determinations" or coverage decisions regarding requests for Mr. Aylward's medical care. The handbook states that for standard coverage decisions, SelectHealth would provide an organization determination within 14 days. For fast coverage decisions, SelectHealth would provide a determination within 72 hours; however, the handbook describes an exception for the fast coverage deadline and

---

[1] SelectHealth contends that a physician observed indications of IPF in Mr. Aylward as early as 2005. The date of Mr. Aylward's IPF diagnosis does not affect our analysis.

states "if . . . some information that may benefit you is missing . . . , or if you need time to get information to [SelectHealth] for the review," a fast determination can be extended "up to 14 more calendar days." The handbook explains that Mr. Aylward would only receive a fast coverage decision if he were asking for coverage for medical care that he had not yet received *and* if SelectHealth's use of the standard deadline "could *cause serious harm to your health or hurt your ability to function*." Regarding the second requirement, the handbook states that if an enrollee's physician informs SelectHealth that the enrollee's health requires a fast coverage decision, SelectHealth "will automatically agree to give you a fast coverage decision."

The handbook also outlines the process and timelines for filing appeals from SelectHealth organization determinations. For a standard appeal, SelectHealth must provide an answer within 30 days, and for a fast appeal or expedited reconsideration, it must answer within 72 hours. The handbook states that "[t]he requirements and procedures for getting a 'fast appeal' are the same as those for getting a 'fast coverage decision.'" As with fast coverage decisions, the handbook states that SelectHealth will automatically provide an expedited reconsideration if a physician states that the enrollee's health requires it.

In January 2016, Mr. Aylward's physician in Idaho, Dr. William Dittrich, referred him to the University of California at San Diego Health System (UCSD) for a lung transplant consultation relating to Mr. Aylward's IPF diagnosis. On January 26, 2016, Dr. Dittrich sent a request for SelectHealth to approve coverage for the UCSD consultation, which SelectHealth approved on February 1, 2016.

On February 10, 2016, Mr. Aylward met with Dr. Gordon Yung at UCSD for a lung transplant consultation. Dr. Yung diagnosed Mr. Aylward with IPF and recommended that he "be evaluated for lung transplantation, but given his age, this should be done as soon as possible." On March 7, 2016, UCSD submitted a preauthorization request for an "evaluation/work-up" for a lung transplant, and on March 10, 2016, SelectHealth approved the request.

On August 22, 2016, UCSD requested SelectHealth's preauthorization for a single lung transplant. While UCSD's request was pending, Dr. Rajat Walia at St. Joseph's Hospital and Medical Center (St. Joseph's) in Phoenix, Arizona sent SelectHealth a request on August 23, 2016, to preauthorize a lung transplant consultation and testing. On August 26, 2016, Mr. Aylward met with Dr. Yung at UCSD, and they discussed the possibility of listing Mr. Aylward for a lung transplant not only at UCSD but also at one or more of three other facilities, including St. Joseph's. On August 30, 2016, SelectHealth approved UCSD's preauthorization request for a single lung transplant.

On August 31, 2016, a SelectHealth case manager worked on St. Joseph's preauthorization request, sent the case for physician review, and asked the reviewing physician, Dr. Peter Christensen, to advise whether dual listing was appropriate and if the requested services at St. Joseph's would be duplicative of those approved at UCSD. On September 1, 2016, SelectHealth denied St. Joseph's preauthorization request for consultation and testing and stated, "[a]dditional services out of network are not covered as the patient has already been approved for out[-]of[-]network services and has had an evaluation and workup for lung transplant. Additional duplicat[e] services are not

shown to be medically necessary and are not covered." That day, the case manager notified Mr. Aylward of the decision, and Mr. Aylward stated that he would file an appeal.

On October 7, 2016, Mr. Aylward filed an appeal from SelectHealth's September 1, 2016 denial, requesting SelectHealth's preauthorization to be dual listed at UCSD and St. Joseph's for a lung transplant, and requested a fast appeal. In his appeal, Mr. Aylward cited his age, the rapid progression of his IPF, the availability of lungs for transplant, and the higher number of lung transplants completed by St. Joseph's than UCSD in 2016. That day, Dr. Krista Schonrock, SelectHealth's medical director, determined that Mr. Aylward's appeal did not warrant a fast appeal timeline and designated it as a standard appeal. She testified that she did so "because [Mr. Aylward] was already on a transplant list" at UCSD. On October 14, 2016, SelectHealth issued its appeal decision, which approved the consultation at St. Joseph's but made "no exception" for testing because "repeating it would be a duplication."

On October 17, 2016, SelectHealth notified St. Joseph's of its appeal decision approving only a lung transplant consultation. SelectHealth's call notes reflect that the St. Joseph's representative stated that a consultation without additional testing would be "useless." St. Joseph's confirmed that the tests requested had not been previously done at UCSD and that St. Joseph's had obtained all other test results from UCSD. On October 22, 2016, Dr. Schonrock approved "[a]ny testing that ha[d] not been previously done." On October 24, 2016, Dr. Yung referred Mr. Aylward to St. Joseph's for a lung transplant evaluation. On October 26, 2016, SelectHealth sent Mr. Aylward a letter notifying him that it approved testing for a lung transplant at

St. Joseph's. On October 28, 2016, Mr. Aylward died in San Diego.

In January 2018, Mrs. Aylward filed a complaint in state court against SelectHealth. In March 2018, SelectHealth removed the action to federal court on the basis of diversity jurisdiction. In November 2018, Mrs. Aylward filed an amended complaint, which asserted various state law claims arising from SelectHealth's administration of the Plan and Mr. Aylward's death, including for negligence, negligent misrepresentation, fraud, bad faith tort, failure to investigate a claim properly, breach of duty to inform the insured of rights, insurer's breach of implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and intentional infliction of emotional distress.

In June 2020, the district court granted summary judgment in favor of SelectHealth. The district court stated that Mrs. Aylward's action was based on her claims that SelectHealth breached "its obligations to [Mr.] Aylward and [Mrs. Aylward] in the handling of [Mr.] Aylward's claim for benefits under the Plan by failing to conduct any investigation into the request for preauthorization submitted by St. Joseph's on August 23, 2016 and failing to" timely process Mr. Aylward's October 7, 2016 appeal. Reasoning that Mrs. Aylward's "claims of failure to investigate are 'inextricably intertwined' to a benefits decision," the district court held that her "claims arise under the Medicare Act and that 42 U.S.C. § 405(h) and (g) require exhaustion of administrative remedies before judicial review." The district court also held that Mrs. Aylward's claims are preempted by the Medicare Act's preemption provision, 42 U.S.C. § 1395w-26(b)(3), because "in order to adjudicate [her] claims, the [c]ourt would necessarily need to determine whether [Mr.] Aylward was entitled to the preauthorization

request for consultation and evaluation at St. Joseph's in the first place, a decision that is governed by detailed CMS standards." The district court reasoned that "[b]eyond contending that [SelectHealth's] benefit decision was wrong, [Mrs. Aylward] fails to allege any other action on [SelectHealth's] part that would support [Mrs. Aylward's] claims."

## II

We consider whether Mrs. Aylward's claims must be exhausted through the Medicare Act's administrative review scheme. "The issue of exhaustion bears on the district court's jurisdiction, so we address [the exhaustion issue] first." *Uhm*, 620 F.3d at 1140 (citation omitted).

## A

Section 1852(g) of the SSA sets forth an administrative review scheme for resolving disputes over benefits determinations by MA organizations. *See* 42 U.S.C. § 1395w-22(g). Before seeking judicial review in federal district court, enrollees must press their claims for benefits through all levels of administrative review. First, an enrollee must proceed through the MA organization's internal benefits determination process, which entails an initial determination by the MA organization as to the enrollee's entitlement to benefits, 42 U.S.C. § 1395w-22(g)(1), and reconsideration by the MA organization, 42 U.S.C. § 1395w-22(g)(2). Next, adverse reconsideration decisions are reviewed by an outside, independent contractor. 42 U.S.C. § 1395w-22(g)(4). If the enrollee, after pursuing these levels of review, is "dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled," and "if the amount in controversy is $100 or more," the enrollee may seek a

hearing before an administrative law judge (ALJ) "to the same extent" as is provided in social security benefits and disability benefits cases under § 205(g) of Title II of the SSA. *See* 42 U.S.C. § 1395w-22(g)(5) (citing 42 U.S.C. § 405(g)); 42 C.F.R. § 422.600. An enrollee who is dissatisfied with the ALJ's decision may then seek review by the Medicare Appeals Council. 42 C.F.R. § 422.608. Finally, if the enrollee receives an adverse decision from the Medicare Appeals Council, and "[i]f the amount in controversy is $1,000 or more," then the enrollee is "entitled to judicial review of the Secretary's final decision" under the provisions of § 205(g) of the SSA. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612.

The familiar requirement that claimants must exhaust their administrative remedies before seeking judicial review of social security or disability benefits determinations rests on § 205(h) of Title II of the SSA, which makes the judicial review provided in § 205(g) the exclusive means for reviewing administrative determinations under Title II. *See* 42 U.S.C. § 405(h); *Weinberger v. Salfi*, 422 U.S. 749, 757–58 (1975). Section 1872 of Title XVIII of the SSA provides that § 205(h) is applicable to cases under the Medicare Act "to the same extent" as in cases under Title II, with the exception that the Secretary is substituted for any references to the Commissioner of Social Security. *See* 42 U.S.C. § 1395ii. Therefore, enrollees in an MA plan must likewise first exhaust their administrative remedies before seeking judicial review of a claim for benefits.

B

We now consider whether Mrs. Aylward exhausted her administrative remedies. As discussed above, the administrative review process set forth in § 1852(g)(5) may be invoked by an enrollee only if, after pursuing fully the

internal benefits determination process with the MA organization, there was a "failure to receive any health service to which the enrollee believes the enrollee is entitled and at no greater charge than the enrollee believes the enrollee is required to pay." 42 U.S.C. § 1395w-22(g)(5). But critically here, when Mr. Aylward pursued that internal review process, SelectHealth approved coverage for the consultation and testing that Mr. Aylward sought. Mr. Aylward appealed the initial denial of his request for a consultation and testing at St. Joseph's. In its appeal decision on October 14, 2016, SelectHealth approved only a consultation at St. Joseph's, but maintained that additional testing there would be duplicative of the tests conducted at UCSD. However, after SelectHealth subsequently verified that the tests had not been previously done at UCSD, on October 22, 2016, SelectHealth revised its appeal decision and approved the new tests at St. Joseph's. On October 26, 2016, SelectHealth sent Mr. Aylward a letter notifying him that his "appeal has been approved" and that SelectHealth granted authorization "to cover [his] requested consult and testing at St. Joseph's Hospital."

The upshot is that SelectHealth had not "failed" to grant a "health service to which the enrollee believe[d] the enrollee [wa]s entitled," 42 U.S.C. § 1395w-22(g)(5), because SelectHealth ultimately approved the consultation and testing sought by Mr. Aylward. Under the plain terms of § 1852(g)(5), Mr. Aylward—or Mrs. Aylward, as his successor—could not have sought further administrative review of an initial denial that was then reversed in the internal review process. Thus, the dispute is not whether Mr. Aylward received a favorable outcome. Rather, Mrs. Aylward contends that Mr. Aylward should have received the services earlier—which is *not* an issue that has an administrative remedy under § 1852(g)(5).

If no administrative remedies are available, it follows that an enrollee cannot be subject to the exhaustion requirement. By its terms, the jurisdictional exclusivity of § 205(h) rests on the premise that the enrollee has been channeled into the administrative review process and therefore may only invoke the statute's prescribed methods for reviewing the resulting administrative decision. *See* 42 U.S.C. § 405(g). Claims outside that administrative process are not ones that can give rise to the sort of administrative decision that triggers applicability of § 205(h) and, in turn, § 205(g). Accordingly, Mrs. Aylward's claims are not subject to the Act's exhaustion requirement.

## III

We turn next to the issue of whether the Medicare Act preempts Mrs. Aylward's state law claims.

## A

Part C of the Medicare Act contains an express preemption provision:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3). Prior to Congress's amendments to the Medicare Act in 2003, the preemption provision stated that federal standards would supersede state law and regulations with respect to MA plans "to the extent such law or regulation is *inconsistent* with such standards," and it identified certain standards that were specifically

superseded.     42   U.S.C.   § 1395w-26(b)(3)(A)   (2000)
(emphasis added).

"Congress  may  displace  state  law  through  express
preemption provisions."  *Uhm*, 620 F.3d at 1148 (citing
*Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).  While
the language of the preemption provision "means that we
need not go beyond that language to determine whether
Congress intended [Part C] to pre-empt at least some state
law, we must nonetheless identify the domain expressly pre-
empted by that language."  *Medtronic, Inc. v. Lohr*, 518 U.S.
470, 484 (1996) (internal  quotation  marks  and  citations
omitted).

The plain language of the provision thus provides that,
in order to determine whether a claim is preempted, we must
identify whether there is a relevant "standard[] established
under [Part C]" with preemptive effect.

B

Mrs. Aylward's  operative  First  Amended  Complaint
pleaded nine different causes of action based on a variety of
tort theories, including bad faith handling of an insurance
claim, fraud, negligence, and breach of fiduciary duty.  The
district court recognized, and Mrs. Aylward concedes, that
her claims are ultimately premised on one or both of two
distinct duties that SelectHealth allegedly breached: (1) a
duty to process Mr. Aylward's October 7, 2016 appeal in a
timely  manner;  and  (2)  a  duty  to  properly  investigate
Mr. Aylward's August 23, 2016 preauthorization request.
We address in turn whether Part C's preemption provision
preempts these bases for Mrs. Aylward's claims.

1

Mrs. Aylward's claim that SelectHealth breached a duty to process timely Mr. Aylward's October 7, 2016 appeal is expressly preempted. Federal regulations implemented under Part C provide specific standards as to how MA organizations must process requests for expedited reconsiderations and the timelines for expedited and standard reconsiderations. *See* 42 C.F.R. §§ 422.584, 422.590. Section 422.584 states that "[f]or a request made by an enrollee, the MA organization must provide an expedited reconsideration if it determines that applying the standard timeframe for reconsidering a determination could seriously jeopardize the life or health of the enrollee or the enrollee's ability to regain maximum function," 42 C.F.R. § 422.584(c)(2)(i), and "[f]or a request made or supported by a physician, the MA organization must provide an expedited reconsideration if the physician indicates" as much, 42 C.F.R. § 422.584(c)(2)(ii).

As stated, under Part C's preemption provision, these "standards . . . supersede any State law or regulation . . . with respect to MA plans." *See* 42 U.S.C. § 1395w-26(b)(3). In *Uhm*, we reviewed the legislative history of the 2003 amendments and recognized that "Congress intended to broaden the preemptive effects of the Medicare statutory regime" and "expand the preemption provision beyond those state laws and regulations inconsistent with the enumerated standards." 620 F.3d at 1149–50. We concluded that generally applicable state consumer protection laws and common law claims can fall within the ambit of Part C's preemption provision. *Id.* at 1152–53, 1155, 1156. Nevertheless, we analyzed the plaintiffs' claims pursuant to the pre-2003 preemption provision and held that the state law consumer protection and state common law fraud claims

at issue were inconsistent with the Medicare Act and CMS regulations. *Id.* at 1152, 1156. Explaining our choice of analysis in light of the 2003 amendments, we reasoned that it was "sufficient for our purposes that, at the very least, any state law or regulation falling within the specified categories and 'inconsistent' with a standard established under the Act remains preempted" and "[t]hat limited scope . . . [was] sufficient to decide" that case. *Id.* at 1150.

Unlike in *Uhm*, which involved state law claims that we concluded were "inconsistent" with the standards provided for in Part C and its implementing regulations, *see id.*, here, we evaluate claims that at least partially parallel such standards. For example, Mrs. Aylward contends that SelectHealth violated the state law obligation to handle his claims "reasonably" in part because it denied expedited reconsideration under § 422.584 "with no apparent justification" for doing so. Other aspects of Mrs. Aylward's claim, however, arguably seek to invoke state law in order to supplement the duty of expedition provided for in the federal standards. Therefore, we must decide whether Part C's preemption provision preempts a state law cause of action that parallels, enforces, or supplements express standards established under Part C and its implementing regulation.

We conclude that it does. We have already held that Part C's preemption provision applies to state law causes of action based on generally applicable laws, *Uhm*, 620 F.3d at 1152–53, 1156, and that conflict between the state law and the federal standard is unnecessary, *id.* at 1149. Thus, we have held that, in determining what qualifies as a state law "with respect to MA plans," 42 U.S.C. § 1395w-26(b)(3), our preemption analysis must be based on the relevant state law duty sought to be imposed under the generally

applicable law invoked by the plaintiff. There is no basis for concluding that a state law duty that parallels, enforces, or supplements an express federal MA standard on the subject is *not* one "with respect to MA plans." *Cf. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) (explaining that state common law duties concerning claims-handling "relate[d] to" to ERISA plans for purposes of ERISA's express preemption provision). Here, because the standards established under Part C expressly prescribe the relevant duties of MA plans with respect to when expedited treatment is required and what timeframes apply, those standards "supersede" any state law duty that would impose obligations on MA plans on that same subject. *See* 42 U.S.C. § 1395w-26(b)(3).

Accordingly, to the extent Mrs. Aylward's state law claims depend on the timeliness of SelectHealth's processing of Mr. Aylward's appeal, we hold that the Act preempts those claims, whether or not they would be inconsistent with federal regulations.

2

Finally, the Act also preempts Mrs. Aylward's claims based on SelectHealth's alleged breach of duty to investigate properly Mr. Aylward's August 23, 2016 preauthorization request for consultation and testing at St. Joseph's. While the claim takes several forms in Mrs. Aylward's amended complaint, she characterizes it on appeal as a claim for the insurer's breach of the implied covenant of good faith and fair dealing.

Because Mr. Aylward's claim was successfully resolved in his favor during the MA plan's internal review process, it follows that Mrs. Aylward's argument that Mr. Aylward's benefits claim was handled in bad faith is necessarily an

argument that the claim should have been favorably resolved more quickly. SelectHealth ultimately approved coverage for the consultation and testing that Mr. Aylward sought in his preauthorization request. Thus, the gravamen of Mrs. Aylward's complaint is best viewed as contending that, due to SelectHealth's alleged mishandling, Mr. Aylward's benefits claim took longer to resolve favorably than it should have. In other words, Mrs. Aylward's second asserted duty is essentially identical to her first alleged duty: a duty to process the claim for benefits, and receive a favorable decision, more quickly.

The asserted duty to conduct an adequate investigation encompasses SelectHealth's handling of Mr. Aylward's August 23, 2016 preauthorization request. Part C's implementing regulations, however, provide the timeframes for making such initial determinations. *See* 42 C.F.R. § 422.568(b)(1) (stating that, as a general matter, initial determinations must be made "as expeditiously as the enrollee's health condition requires, but no later than 14 calendar days after the date the organization receives the request"). Therefore, for the same reasons as those discussed in reference to Mr. Aylward's October 7, 2016 appeal, we conclude that a state law claim based on a duty to process claims for benefits in a timely manner is preempted by the Part C regulations that set forth the timeframes for initial determinations and reconsideration decisions.

Accordingly, we hold that the Act preempts Mrs. Aylward's claims premised on SelectHealth's alleged breach of duty to properly investigate Mr. Aylward's August 23, 2016 preauthorization request.

IV

Because the Medicare Act's express preemption provision, 42 U.S.C. § 1395w-26(b)(3), bars Mrs. Aylward's state law claims, the district court's summary judgment in favor of SelectHealth is **AFFIRMED**.