**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LA QUINTA WORLDWIDE LLC,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>Q.R.T.M., S.A. DE C.V., dba Quinta Real,<br>*Defendant-Appellant*. | No. 12-15985<br><br>D.C. No.<br>4:09-cv-00175-RCC<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted
May 16, 2014—San Francisco, California

Filed August 6, 2014

Before: Barry G. Silverman and Ronald M. Gould, Circuit
Judges, and Ivan L.R. Lemelle, District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable Ivan L.R. Lemelle, District Judge for the U.S. District Court for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Trademark Law

The panel affirmed in part the district court's judgment after a bench trial and vacated a permanent injunction in a trademark infringement case brought by La Quinta Worldwide LLC ("La Quinta") against Q.R.T.M., S.A. de C.V. ("Quinta Real").

The panel held that the "use in commerce" element of Lanham Act sections 32 and 43(a) claims is not a jurisdictional requirement, and that it had subject-matter jurisdiction under 15 U.S.C. § 1121(a) over La Quinta's claims.

The panel held that the district court correctly concluded that expansion of Quinta Real's Mexican hotel business into the United States would result in a likelihood of consumer confusion with La Quinta.

The panel held that the defense of laches did not apply.

The panel concluded that the district court did not provide a sufficient analysis balancing the equities in its decision to grant a permanent injunction.

The panel affirmed in part as to trademark violations, but vacated the permanent injunction and remanded in part for further assessment of the equities.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Richard P. Jacobson (argued), Frank J. Colucci & Janice K. Yoon, Colucci & Umans, New York, New York, for Defendant-Appellant.

Joseph C. Gioconda (argued) & Jonathan A. Malki, Gioconda Law Group PLLC, New York, New York, for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

Q.R.T.M., S.A. de C.V. ("Quinta Real"), appeals from the district court's judgment and order concluding that expansion of Quinta Real's Mexican hotel business into the United States would result in a likelihood of consumer confusion with La Quinta Worldwide, LLC ("La Quinta"). The district court issued a permanent injunction against the use of "Quinta Real" in association with hotels and lodging in the United States. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We conclude that there is federal subject-matter jurisdiction over the trademark claims, and that the district court correctly found a likelihood of confusion, but that the district court did not provide a sufficient analysis balancing the equities in its decision to grant a permanent injunction. We affirm in part as to trademark violations, but vacate the permanent injunction and remand in part requesting further assessment of the equities.

**I**

Since 1968, La Quinta has operated hotels and motels in the United States on its own and through franchise agreements, and it has long held trademarks for "La Quinta" in connection with "motel services." Today there are more than 800 La Quinta mid-tier hotels across the United States, including more than 80 in major U.S. cities, renting 23 million rooms to hotel guests each year. About half of La Quinta's hotels are operated by franchisees. La Quinta's franchise agreements require it to provide operational support, marketing, and training to its franchisees. La Quinta also offers franchisees a non-compete geographic zone in which no other La Quinta hotel will be opened, and La Quinta agrees to ensure "that there is no misuse or infringement that could harm franchisees' investment in the brand," and to maintain and enforce quality control standards. La Quinta spends millions of dollars each year advertising on national television, radio, in print advertising, through direct mail and multiple formats of internet advertising. La Quinta is often featured in magazines, travel guidebooks, and on internet travel sites.

Quinta Real opened its first hotel in 1986 in Guadalajara, Mexico, and today operates eight luxury hotels throughout Mexico. Quinta Real's hotels are considered to be some of the most luxurious in Mexico, and the average daily room rate is $183 per night. Quinta Real hotels offer a wide range of amenities, and about 40% of Quinta Real's hotel guests are from the United States. Like La Quinta, Quinta Real has authorized third-party websites such as Expedia.com and Orbitz.com to promote and book reservations at its hotels. Quinta Real is also often featured in travel guidebooks.

Quinta Real plans to develop a luxury hotel in a major U.S. city. In 1994, Quinta Real entered into a letter of intent to build a hotel in San Antonio, Texas, and this letter was publicized, although there was no indication of what the hotel would be called. La Quinta has said that it was "unaware of Quinta Real's exploration of the San Antonio hotel market." This letter of intent came to nothing, and Quinta Real next entered into a letter of intent in 2007 to build a hotel in Tucson, Arizona. Although that letter also came to nothing, Quinta Real still intends to enter the United States market. While Quinta Real's efforts to open a hotel in the United States have not yet reached fruition, La Quinta, by contrast, has already opened several hotels in Mexico.

La Quinta filed the complaint giving rise to this action in March 2009, two years after the date of Quinta Real's last letter of intent. After a bench trial, the district court granted La Quinta a permanent injunction, concluding that a likelihood of confusion exists and that the permanent injunction factors listed in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), favored La Quinta. This appeal followed. In substance Quinta Real raises four arguments: (1) that there is no federal subject-matter jurisdiction over this case; (2) that La Quinta's suit is barred by laches; (3) that no likelihood of confusion exists; and lastly, (4) that the district court erred in granting La Quinta a permanent injunction. We address each argument in turn.

## II

Quinta Real argues that we lack subject-matter jurisdiction because its expressions of intent to open a hotel are not sufficient to show a "use in commerce" under the Lanham Act. The "use in commerce" requirement that

Quinta Real relies on is found in sections 32 and 43(a) of the Lanham Act, which both lay out claims for infringement. We hold that the "use in commerce" element of Lanham Act sections 32 and 43(a) claims is not a jurisdictional requirement, and we have subject-matter jurisdiction under 15 U.S.C. § 1121(a).

Federal jurisdiction over trademark claims is granted by the Lanham Act, 15 U.S.C. § 1121(a), which "confers broad jurisdictional powers upon the courts of the United States" in conjunction with 28 U.S.C. § 1331. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952); *see Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992). The Lanham Act grants federal subject-matter jurisdiction over "all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. § 1121(a).

To understand whether this broad grant is narrowed by other language in the Lanham Act, we turn to United States Supreme Court precedent. The Supreme Court has distinguished jurisdictional requirements from those required to establish a cause of action. *See Bell v. Hood*, 327 U.S. 678 (1946). Under *Bell*,

> Whether the complaint states a cause of action on which relief could be granted is a question of law and . . . it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case

would be on the merits, not for want of jurisdiction.

*Id*. at 682 (citations and footnote omitted); *see Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983). "The core holding in *Bell* was 'that the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal.'" *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) (quoting *Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 96 (1998)).

The Supreme Court has recently addressed in more detail the difference between elements of a claim and jurisdictional requirements. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the Supreme Court confronted a suit that the district court had dismissed for lack of subject-matter jurisdiction. The district court reasoned that because the plaintiff could not show that the defendant met the 15-employee threshold required in Title VII to bring a cause of action, the court lacked subject-matter jurisdiction over the claims. *Id*. at 503–04. The Supreme Court concluded that because (1) Congress included no employee-numerosity requirement in the Title VII jurisdictional grant; (2) the employee-numerosity requirement was only included in a "separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts"; and (3) no other factor suggested that the employee-numerosity requirement was intended to be jurisdictional, such a requirement was not a condition for subject-matter jurisdiction. *Id*. at 514–15 (internal quotation marks and citation omitted); *see also Reed Elsevier, Inc. v. Muchnik*, 559 U.S. 154, 163–66 (2010); *Leeson v. Transamerica Dis. Income Plan*, 671 F.3d 969 (9th Cir. 2012). Rather, federal courts have subject-matter jurisdiction over all suits pleading

"a colorable claim 'arising under' the Constitution or laws of the United States," so long as Congress does not clearly indicate otherwise. *Arbaugh*, 546 U.S. at 513–14.

Here, the "use in commerce" element of Lanham Act claims under sections 32 and 43(a) is not connected to the Lanham Act's jurisdictional grant in 15 U.S.C. § 1121(a), which grants federal subject-matter jurisdiction without any reference to a "use in commerce" requirement. Nothing suggests that Congress intended that "use in commerce" be interpreted as a jurisdictional requirement, and we conclude that we have subject-matter jurisdiction over La Quinta's claims under the Lanham Act. *See Arbaugh*, 546 U.S. at 515–16 ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.").[1]

## III

To show trademark infringement, a plaintiff must establish ownership of a trademark and a likelihood of

---

[1] We have previously described the "use in commerce" requirement as a "jurisdictional predicate to any law passed by Congress under the Commerce Clause." *Bosley v. Med. Inst. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). In that case we held that Congress was not deliberately creating, using the "use in commerce" language, a meaning different from the "in connection with a sale of goods or services" language used in other parts of the Lanham Act. *Id*. We did not, and do not now, interpret "use in commerce" as a requirement for federal subject-matter jurisdiction. *See Arbaugh*, 546 U.S. at 510 ("Jurisdiction, this Court has observed, is a word of many, too many, meanings." (internal quotation marks and citation omitted)).

consumer confusion.[2]    *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  When determining whether a likelihood of confusion exists we weigh eight factors:

> (1) the strength of the mark;
> (2) the proximity of the goods;
> (3) the similarity of the marks;
> (4) evidence of actual confusion;
> (5) marketing channels used;
> (6) the type of goods and the degree of care likely to be exercised by the purchaser;
> (7) defendant's intent in selecting the mark; and
> (8) likelihood of expansion of the product lines.

*Id.*    The factors are intended to act as "guideposts" for determining whether a likelihood of consumer confusion exists, and are adaptable to specific cases.  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011).  Quinta Real argues that the district court misapplied all of the above factors.  But, for the reasons that follow, we conclude that the clear weight of the factors

---

[2] We review for clear error the district court's conclusion regarding the likelihood of confusion as well as the district court's application of the likelihood confusion factors to the facts of the case.  *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002).  We accept the district court's findings of fact unless they are clearly erroneous.  *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004).

supports the district court's conclusion that a likelihood of confusion exists.

### 1.  Strength of the mark

The strength of a mark determines the level of trademark protection it is given. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). "The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Id*.; *see One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164–65 (9th Cir. 2009); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207–08 (9th Cir. 2000). We determine the strength of a mark by examining its conceptual strength—that is, where it falls in the spectrum of marks—and the strength of the mark within the marketplace. *One Indus.*, 578 F.3d at 1164.

Quinta Real does not challenge the district court's conclusion that La Quinta's mark is strong because it has extensive secondary meaning and a robust commercial presence. Instead, Quinta Real argues that because "both parties have strong marks, confusion is not likely to occur," pushing against the district court's conclusion that "[b]ecause both marks are strong, this factor weighs in favor of La Quinta."

Both the district court and Quinta Real mistake this factor, and Quinta Real's argument is without merit. The strength of the junior mark, here Quinta Real, is important to weighing this factor in cases of reverse infringement. In those cases, the issue is whether the strength of the junior user's mark is so significant that it may overpower the senior user's mark.

*See Surfvivor Media, Inc. v. Survivor Prod.*, 406 F.3d 625, 631–32 (9th Cir. 2005); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n.2 (9th Cir. 2000). This is not a reverse infringement case, and the district court should not have considered the strength of Quinta Real's mark in determining what level of trademark protection to extend to La Quinta's mark. As such, the district court erred in its analysis, but it correctly concluded that the factor weighs in favor of La Quinta because its mark is descriptive with significant secondary meaning and a large presence in the hotel marketplace.

### 2. Proximity of the Services Offered

Goods or services that are closely related are generally more likely than unrelated goods or services to confuse the public as to their sources. *Brookfield*, 174 F.3d at 1055. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation*, 638 F.3d at 1150.

The district court found that both La Quinta and Quinta Real offer hotel services, and while they operate hotels in different tiers of the market, "a reasonable customer could conclude that the two hotel chains are from the same source because some American hotels operate several different levels of hotels under one umbrella brand." It also noted that "the rates of the two hotel chains overlap significantly," and for these reasons it concluded that the factor favors La Quinta. *Id.* Quinta Real points to no evidence showing that the district court's conclusion regarding umbrella brands is clearly erroneous. Even if La Quinta has no plans to expand into the luxury hotel market, the district court reasonably

concluded that the varying tiers of hotel service do not render the services less related because hotel consumers frequently encounter hotel umbrella brands, including Marriott and Hilton.[3] We agree that this factor favors La Quinta.

### 3. Similarity of the Marks

The similarity of the marks is "a critical question in the likelihood-of-confusion analysis." *GoTo.com*, 202 F.3d at 1205. To assess similarity, we compare the two marks in terms of sight, sound, and meaning, considering the marks "as a whole, as [they] appear in the marketplace." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1082 (9th Cir. 2005) (quotation marks and citation omitted). Generally, similarities between the marks weigh more heavily than differences. *Sleekcraft*, 599 F.2d at 351. And the amount of similarity required to support a likelihood of confusion declines as the services themselves become increasingly similar. *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992); *Mobil Oil v. Pegasus Petroleum*, 818 F.2d 254, 258 (2d Cir. 1987); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Here, the district court correctly concluded that the marks are similar and that this factor favors La Quinta.

---

[3] The only case Quinta Real offers to contradict the umbrella brand theory is a district court case from New Jersey, *Kinark Corp. v. Camelot, Inc.*, 548 F. Supp. 429, 449 (D.N.J. 1982), which is inapposite because it concerned travel agents and convention organizers, not ordinary hotel consumers, and a hotel name that is inordinately common—Camelot.

Quinta Real argues that: (1) the district court erroneously considered "Quinta" in isolation from other differentiating elements; and (2) by opening hotels in Mexico and coexisting with the La Quinta Resort and Club in California, La Quinta cannot argue that the marks are overly similar. We reject these arguments.

The district court's conclusion that the marks are similar is not clearly erroneous. It examined the sight, sound, and meaning of "La Quinta" and "Quinta Real," and reasonably determined that the words shared a similar meaning when translated ("country home" and "royal villa") and an identical dominant word: "Quinta." *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) (holding that although the mark logos were dissimilar, "it does not appear that the district court committed clear error in relying on the dominant element GALLO for its finding of similarity in sight, sound and meaning"). This conclusion is supported by the fact that the dominant words frequently appear without anything more in the marketplace. Where both marks are attached to such closely related services and the senior user has a strong mark, the similarity of the words is sufficient for this factor to weigh in favor of La Quinta.

Quinta Real's second argument regarding La Quinta's expansion into Mexico does not succeed because it seeks to equate two separate trademark protection systems operating in different markets. While we are troubled by the inequitable circumstances, La Quinta's use of its mark in Mexico does not determine whether the marks are similar or whether La Quinta will suffer injury in the United States by Quinta Real's expansion into this market. As such, the district court did not clearly err in finding the marks to be similar.

### 4.  Evidence of Actual Confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352.  However, due to "the difficulty of garnering such evidence, the failure to prove instances of actual confusion is not dispositive . . . . [T]his factor is weighed heavily only when . . . the particular circumstances indicate such evidence should have been available." *Id*.; *see Brookfield*, 174 F.3d at 1050 ("[D]ifficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.").  Despite Quinta Real's contention that the two marks have coexisted for twenty-five years and, therefore, evidence of actual confusion should be available, Quinta Real and La Quinta have never both operated in the U.S. market.  Quinta Real has American customers, but it has only offered services within Mexico.  The district court correctly concluded that a lack of actual confusion in the United States does not weigh against La Quinta.

### 5.  Marketing Channels Used

When examining the marketing channels used by the competing companies, we consider where the goods or services are sold, the sales and marketing methods employed, and the class of purchasers exposed to the marketing efforts. *Sleekcraft*, 599 F.2d at 353.  The district court concluded that this factor weighed in favor of La Quinta because the marketing efforts of La Quinta and Quinta Real "converge with third-party internet travel sites and guidebooks."  This conclusion is supported by evidence in the record showing that both La Quinta and Quinta Real use internet travel sites such as Expedia.com and Orbitz.com to reach consumers, as well as placements in travel guidebooks.  The use of identical

third-party travel sites is particularly likely to cause confusion because "it allows for [the] competing marks to be encountered at the same time, on the same screen." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (quoting *GoTo.com*, 202 F.3d at 1207); *see Network Automation*, 638 F.3d at 1149. The district court correctly concluded that this factor favors La Quinta.

### 6. Type of Services and Degree of Care

Under this factor we look at the type of good or service offered and the degree of care one would expect from "the average buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. The district court found that 70% of Quinta Real's guests are business travelers who rely on others to make their reservations and that on average guests stay at Quinta Real hotels for 2.4 nights and spend $439 per stay on their rooms. Combined with the overlapping marketing channels and room rates, the district court concluded that this factor favors La Quinta. That most of Quinta Real's guests are business travelers who stay only a short amount of time at the hotel and spend a relatively modest sum supports the district court's conclusion that this factor favors La Quinta, and we find no error on the part of the district court. *Cf. Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (concluding that consumers would exercise a high degree of care when purchasing ad buys for $2,400 to $16,000).

### 7. Quinta Real's Intent in Selecting the Mark

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public

will be deceived." *Network Automation*, 638 F.3d at 1153 (quoting *Sleekcraft*, 599 F.2d at 354). The district court erred in concluding that this factor favors La Quinta. Despite finding that Quinta Real adopted its name without knowledge of La Quinta and that Quinta Real had not exercised bad faith in trying to enter the U.S. market under that name, the district court concluded that the factor weighed against Quinta Real because it could use another name in the United States without prejudice. But the district court's factual findings, that Quinta Real could use another name without prejudice, would only be relevant here in crafting a remedy. *See Sleekcraft*, 599 F.2d at 354 ("Good faith is less probative of the likelihood of confusion, yet may be given considerable weight in fashioning a remedy."). However, because this factor, when properly considered, is neutral, the district court's error in this respect is not so significant as to disturb its conclusion that a likelihood of confusion exists.

## 8. Zone of Expansion

When there is "a strong possibility that either party may expand his business to compete with the other," this factor weighs in favor of finding "that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (internal quotation marks and citation omitted). Although La Quinta has no plans to expand into luxury hotels and Quinta Real has no plans to expand into mid-tier hotels, the district court found that "[a] hotel in the United States competes with all the other hotels on its corner, regardless of rating or services offered." A weakness in Quinta Real's appellate challenge on this point is that this finding of fact is not clearly erroneous. La Quinta submitted witness testimony supporting this broad concept of competition and the testimony was admitted in evidence. Quinta Real gave no contrary evidence to support its assertion

that "[e]ven if Quinta Real were to open a hotel in the same metropolitan area as La Quinta, the hotels still would not compete for the same consumers." Because the record supports the conclusion that proximate hotels compete with each other regardless of tier and Quinta Real has definite plans to expand into major U.S. cities, the district court did not err in concluding that this factor favors La Quinta.

The weight of the factors supports the district court's conclusion that a likelihood of confusion exists. No factor supports Quinta Real, and only two factors appear neutral in this analysis. We conclude that the district court correctly found a likelihood of confusion.

**IV**

Quinta Real argues that the defense of laches applies, and that the period in which La Quinta could file a claim has expired. The defense of laches "can defeat an otherwise valid claim under the Lanham Act." *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).

We analyze the laches defense with a two-step process. First, we determine whether the limitations period for laches has expired. If the period has not expired before suit was filed, there is a strong presumption against the laches defense. *Id*. That presumption is reversed if the laches period expired before the suit was filed. *Id*. We review *de novo* whether a laches defense is available to a defendant. *Id*. at 1109; *In re Beaty*, 306 F.3d 914, 920 (9th Cir. 2002). Second, if the laches period expired before suit was filed, we apply the factors listed in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983), to determine whether "the

trademark owner's delay in filing suit was unreasonable and, therefore, barred," *Tillamook*, 465 F.3d at 1108. We review the district court's application of the *E-Systems* factors to the particular facts of the case for abuse of discretion. *Tillamook*, 465 F.3d at 1109; *Beaty*, 306 F.3d at 920.

The district court concluded that even if the laches period had run under the first step of analysis, the *E-Systems* factors do not favor barring La Quinta's suit. We agree. To prove that a delay in filing was unwarranted, the party asserting a laches defense must show that the following six factors weigh in its favor:

> (1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay.

*E-Systems*, 720 F.2d at 607; *see also Tillamook*, 465 F.3d at 1108. To benefit from this equitable defense, "[t]he party asserting laches must demonstrate that it has 'suffered prejudice as a result of plaintiff's unreasonable delay in filing suit.'" *Tillamook*, 465 F.3d at 1108 (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002)).

Here, Quinta Real challenges the district court's assessment of several of the above factors. However, the only prejudice Quinta Real claims is that "the court's ruling has harmed Quinta Real because it cannot exercise the right to open a hotel in the United States under its strong and

reputable brand, while, at the same time, La Quinta freely establishes hotels under its name in Mexico." Contrary to Quinta Real's assertion, the question is not whether the district court's ruling prejudiced Quinta Real, but rather whether La Quinta's alleged "unreasonable delay in filing suit" did so. Quinta Real gives no evidence that the period of delay, which is the time between the two letters of interest, resulted in prejudice to its efforts to open a hotel in the United States. The district court found this absence of prejudice to be the most important factor in its analysis. Further, the district reasonably concluded, following its likelihood of confusion analysis, (1) that the La Quinta mark is strong and valuable; (2) that La Quinta had been diligent in enforcing its rights; (3) that the two marks will compete with each other in the United States with significant harm to La Quinta, the senior user; and (4) that Quinta Real knew of La Quinta's presence in the United States before it began exploring the possibility of opening a hotel in a major U.S. city. We affirm the district court's denial of Quinta Real's laches defense.

## V

Finally, Quinta Real argues that the district court erred in entering a permanent injunction in favor of La Quinta. We review the district court's decision to grant a permanent injunction for abuse of discretion. *Interstellar*, 304 F.3d at 941. "If the district court 'identified and applied the correct legal rule to the relief requested,' we will reverse only if the court's decision 'resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *United States v. Hinkson*,

585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)). We "must consider whether the [district court's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011) (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750 (9th Cir. 1982)); *see Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407 (10th Cir. 1996) ("[An appellate court] must consider whether the decision maker failed to consider a relevant factor . . . .") (quoting *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (internal quotation marks omitted)).

Trademark law gives federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. § 1116; *see Perfumebay*, 506 F.3d at 1177. Following those principles, a permanent injunction may be entered where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391; *see Herb Reed*, 736 F.3d at 1248–50 (applying *eBay* factors to trademark law); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006).

While "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court," the "traditional principles of equity" demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case. *eBay*, 547 U.S. at 391,

394; *see DISH Network*, 653 F.3d at 776; *see generally* 1 Dobbs Law of Remedies § 2.9 (2d ed. 1993); 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2942 (3d ed. 1998). It is important to consider the totality of circumstances bearing on whether a permanent injunction is appropriate equitable relief.

We are concerned that the district court's analysis does not discuss a fact we think relevant to weighing the equities in this case: That a permanent injunction in favor of La Quinta here would bar Quinta Real from opening a hotel in the United States under its own name, while at the same time La Quinta would remain free to open hotels and do business in Mexico as "La Quinta." We do not decide that this fact is determinative and we express no opinion on whether the district court should issue a permanent injunction after having taken account of all the relevant facts. But to our thinking this consideration is pertinent to whether a permanent injunction here against Quinta Real operating through its name in the United States is fair and equitable relief in light of the La Quinta hotel operations in Mexico. The omission of this consideration from the district court's analysis leaves us uncertain whether the district court considered all relevant factors in assessing the balance of hardships. Accordingly, we vacate the permanent injunction and remand to the district court on an open record for reconsideration, which shall include the district court's assessment of the significance, if any, of La Quinta's currently unrestrained competition with Quinta Real in Mexico.

## VI

We conclude that the district court correctly found federal subject-matter jurisdiction over this suit, that the laches

defense is not available to Quinta Real, and that the district court did not abuse its discretion in finding a likelihood of confusion. We vacate the permanent injunction and remand on an open record for further analysis of the propriety of a permanent injunction consistent with this opinion. The district court may conduct whatever further proceedings it thinks helpful, including, if necessary, taking additional evidence and the making of factual findings pertinent to its decision on permanent injunction.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.[4]**

---

[4] We order that each party bear its own costs on appeal under General Order 5.4(e).