**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOCTOR'S BEST, INC., a Delaware corporation,

*Plaintiff - Appellee*,

v.

NATURE'S WAY PRODUCTS, LLC, a Wisconsin limited liability company,

*Defendant - Appellant*.

No. 24-2719

D.C. No. 8:23-cv-00766-KK-KES

OPINION

Appeal from the United States District Court
for the Central District of California
Kenly Kiya Kato, District Judge, Presiding

Argued and Submitted February 10, 2025
Pasadena, California

Filed July 15, 2025

Before: Richard A. Paez, Sandra S. Ikuta, and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Paez;
Special Concurrence by Judge Ikuta

## SUMMARY[*]

### Lanham Act

The panel affirmed the district court's summary judgment in favor of Doctor's Best, Inc., on its claim for a declaratory judgment of non-infringement and on Nature's Way Products, LLC's counterclaim for trademark infringement under the Lanham Act.

Nature's Way owned the U.S. trademark "Nature's Way" for use on its nutritional supplements. Doctor's Best, a competitor, developed a new line of branded supplements, "Nature's Day," and sought a U.S. trademark. The "Nature's Day" mark appeared on goods that were manufactured and transported in the United States but were exclusively sold and marketed to consumers abroad.

*Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023), holds that the trademark infringement provisions of the Lanham Act are not extraterritorial and extend only to claims where the claimed infringing use in commerce is domestic. The panel held that the district court properly applied *Abitron*'s extraterritoriality framework to determine which of Doctor's Best's activities were actionable under the Lanham Act. The only actionable (i.e., domestic) conduct was the U.S. transport of Doctor's Best's Nature's Day products. The panel held that the district court properly applied the *Sleekcraft* factors in concluding that Nature's Way could not show a likelihood of consumer confusion as to this conduct. The panel thus agreed with the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

district court that no rational jury could find that Doctor's Best's domestic conduct infringed Nature's Way's protected trademarks.

Specially concurring, Judge Ikuta wrote that she concurred in the result. She wrote that Doctor's Best's transport of Nature's Day supplements in the United States constituted a domestic use in commerce, and the evidence in the record did not create a genuine issue of material fact as to whether this transport caused a likelihood of domestic confusion. Judge Ikuta wrote that, under *Abitron*, the court does not consider extraterritorial consumer confusion.

**COUNSEL**

G. Warren Bleeker (argued) and M. John Carson, Lewis Roca Rothgerber Christie LLP, Glendale, California, for Plaintiff-Appellee.

Aaron T. Olejniczak (argued) and Christopher R. Liro, Andrus Intellectual Property Law LLP, Milwaukee, Wisconsin; Peter E. Garrell, Garrell Cohon Kennedy LLP, Los Angeles, California, for Defendant-Appellant.

# OPINION

PAEZ, Circuit Judge:

In this appeal, we consider the impact of *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023), on a claim of trademark infringement under the Lanham Act, where the allegedly infringing mark appears on goods that are manufactured and transported in the United States, but exclusively sold and marketed to consumers abroad.

Nature's Way Products (NWP) has long owned the U.S. trademark "Nature's Way" for use on its well-known nutritional supplements. Doctor's Best (DB), a competitor, recently developed a new line of branded supplements, "Nature's Day," and sought a U.S. trademark. In response to DB's suit for a declaratory judgment of non-infringement, NWP asserted a counterclaim for trademark infringement under the Lanham Act. The district court granted summary judgment to DB, concluding that NWP failed to raise a genuine issue of material fact that DB's actionable domestic conduct was likely to cause consumer confusion.

On appeal, NWP argues: (1) the district court misapplied *Abitron*'s extraterritoriality framework; (2) alternatively, the district court erred in finding no genuine issue of material fact as to the likelihood of consumer confusion; and (3) the district court abused its discretion in denying NWP's request to defer summary judgment proceedings to permit additional discovery.

We affirm. As the record shows, DB, the alleged infringer, uses the challenged mark in both domestic and foreign commerce, but the sole domestic "use in commerce" is the transport of products bearing the mark from a

California manufacturing facility to overseas markets. On these facts, the district court did not err in applying *Abitron*'s extraterritoriality framework to determine which of DB's activities were actionable under the Lanham Act. Further, given that the only actionable (i.e., domestic) conduct was the U.S. transport of DB's Nature's Day products, the district court properly applied the *Sleekcraft* factors[1] in concluding that NWP could not show a likelihood of consumer confusion. Thus, we agree with the district court that no rational jury could find that DB's domestic conduct infringed NWP's protected trademarks in violation of the Lanham Act.

## I.  Background

### A.  Facts

NWP is a nutritional supplement company that has marketed and sold products under its "Nature's Way" mark in the U.S. since 1969. DB is another nutritional supplement company that recently developed a line of Nature's Day branded supplements.

DB manufactures Nature's Day products in Tustin, California, but exclusively sells and markets them outside the U.S.[2] Nature's Day products are sold to consumers in China, South Korea, and Taiwan. A DB executive for commercial development stated in a declaration that it was her understanding that the Nature's Day product labels—including the Nature's Day word mark and design—were

---

[1] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

[2] Separate from the "Nature's Day" products at issue in this case, DB sells "Doctor's Best" branded supplements at major U.S. retailers.

independently created by a third-party in China for use in Asian markets, without reference to NWP's marks.

DB disavows any intent to sell or market Nature's Day products to end consumers in the U.S. by any means. The record shows that DB manufactures Nature's Day supplements in the U.S. and labels them in English because it has determined that foreign consumers view U.S. goods as premium, high-quality, and safe products. The record further shows that Nature's Day product labels contain information required by U.S. regulations, including a Food and Drug Administration disclaimer, because domestically manufactured products must comply with U.S. labeling requirements, regardless of where they are advertised and sold.

DB owns an international trademark for the Nature's Day mark. In 2022, it filed an application with the U.S. Patent and Trademark Office for the Nature's Day mark, covering nutritional supplements on an intent-to-use basis. Upon discovering the application, NWP sent a cease-and-desist letter to DB, identifying NWP's ownership of the Nature's Way mark and asserting superior rights.

## B. Procedural History

In response to NWP's demand letter, DB filed suit in May 2023, seeking a declaratory judgment of non-infringement under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. NWP counterclaimed for infringement and related claims.

In June 2023, the Supreme Court decided *Abitron*, holding that the provisions of the Lanham Act underlying NWP's trademark infringement counterclaim "are not extraterritorial and . . . extend only to claims where the

claimed infringing use in commerce is domestic."  600 U.S. at 415 (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)).

Discovery opened in September 2023, after the parties held their Federal Rule of Civil Procedure 26(f) scheduling conference.  Fed. R. Civ. P. 26(d)(1).  The district court set June 6, 2024, as the close of discovery, and ordered that dispositive motions be heard by August 5, 2024.  In late December 2023, roughly five months before the discovery deadline, DB notified NWP that it intended to move for summary judgment as to non-infringement.  DB filed its motion for summary judgment on January 22, 2024.

NWP timely filed an opposition and also moved, under Federal Rule of Civil Procedure 56(d), for denial or deferral of DB's summary judgment motion to allow further time for discovery.  In support of the Rule 56(d) motion, counsel filed a declaration identifying several facts NWP sought to discover, stating that those facts were essential to NWP's opposition, and that, based on counsel's information and belief, those facts existed.

When it filed its opposition, NWP had not pursued any formal discovery.  DB also had not made any discovery requests, but rested its summary judgment motion on declarations from its executives.  Only after NWP filed its opposition did it serve its first set of written discovery requests.

The district court denied NWP's Rule 56(d) motion, granted DB's summary judgment motion, and entered judgment in favor of DB.  In denying additional time for discovery, the court reasoned that NWP failed to provide a basis to conclude the facts it sought to discover existed, and further failed to conduct discovery diligently.

On the merits, the district court concluded that NWP could not show a likelihood of consumer confusion, and therefore could not establish trademark infringement under the Lanham Act. §§ 1114(1)(a), 1125(a)(1). In so ruling, the district court first applied the extraterritoriality framework laid out in *Abitron*, determining that DB's relevant conduct in the U.S. was "limited to manufacturing, bottling, labeling, and transporting its Nature's Day branded supplements." The court concluded that the transport was a domestic "use in commerce" actionable under the Lanham Act. *See* 15 U.S.C. § 1127.

Next, the district court analyzed whether there was a genuine issue of material fact that DB's actionable domestic conduct was likely to cause consumer confusion. The court applied the *Sleekcraft* factors to analyze the likelihood of confusion and concluded that the most relevant considerations cut against NWP: (1) the lack of evidence of actual confusion; (2) the evidence showing divergent marketing channels used for Nature's Way and Nature's Day products; and (3) the absence of evidence showing a strong possibility of expansion.

The court declined to analyze the remaining factors because they were "less relevant in light of the absence of any sales, advertising, or other interaction with United States consumers and the fact that [DB] advertises and sells only to consumers abroad." The court concluded that there was "no genuine issue of material fact that [DB's] use of the Nature's Day mark for its transport in commerce is not likely to cause consumer confusion." Thus, there was no trademark infringement as a matter of law.

## II.  Standard of Review

We review de novo a grant of summary judgment. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012).  "Viewing the evidence in the light most favorable to [the non-moving party], we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."  *Id.* (quotation omitted).  We review for abuse of discretion the denial of a Rule 56(d) motion. *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 661 (9th Cir. 2020).

## III.   Legal Background

To prevail on a trademark infringement claim, a plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."  *Rearden*, 683 F.3d at 1202 (quotation omitted).  Only the latter requirement is at issue in this appeal.

The eight *Sleekcraft* factors for determining whether an allegedly infringing use of a mark is likely to cause consumer confusion are well-established.  *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003)).  Unique questions arise, however, where some or all of the allegedly infringing use occurred outside U.S. territory, because the trademark infringement provisions of the Lanham Act are not extraterritorial.  *Abitron*, 600 U.S. at 415 (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)).  In *Abitron*, the Supreme Court held that the trademark infringement provisions of the

Lanham Act "extend only to claims where the claimed infringing use in commerce is domestic." *Id.* In other words, "'use in commerce' provides the dividing line between foreign and domestic applications of these Lanham Act provisions." *Id.* at 423.

## IV. Analysis

### A. Extraterritoriality

The district court correctly applied *Abitron* in granting summary judgment to DB. *Abitron* required the district court to isolate DB's domestic "use in commerce" of the Nature's Day mark from its non-actionable foreign conduct. *See id.* at 419. Because DB's conduct abroad is beyond the scope of the Lanham Act, the court properly cabined its inquiry to whether NWP had raised a triable factual dispute that DB's domestic activities—manufacturing, bottling, labeling, and transporting in commerce Nature's Day supplements—were likely to cause consumer confusion. *See id.* at 424.

The district court concluded that DB's "domestic conduct and use of the Nature's Day mark is actionable under the Lanham Act[, however,] such conduct is actionable under the Lanham Act to the extent that it is likely to cause consumer confusion." Despite the court's express ruling, NWP argues that the district court erroneously interpreted *Abitron* as requiring a plaintiff to show a "*domestic* likelihood of confusion to establish trademark infringement." According to NWP, it follows from *Abitron* that "[a]ny domestic use [in commerce] . . . create[s] a sufficient nexus with the United States to avoid impermissible foreign application." Thus, NWP argues that if the court finds a domestic use in commerce, the likelihood of confusion inquiry may proceed without regard to

territorial limitations.  This argument misconstrues *Abitron* and the district court's order.

NWP is correct that *Abitron* did not tether the extraterritoriality analysis to the likelihood of confusion element of a trademark infringement claim, and held instead that a permissible, non-extraterritorial application hinges on the location of the "use in commerce."  *Id.* at 422–24. *Abitron*'s territorial limitation on the trademark infringement provisions of the Lanham Act, however, necessarily narrows the conduct a factfinder may look to in analyzing the likelihood of confusion, by limiting the geographic scope of conduct capable of supporting a claim. *See id.* at 415, 423.  For a viable trademark infringement claim, the challenged commercial use of a mark must be likely to cause consumer confusion, *Rearden*, 683 F.3d at 1202, so the district court correctly focused its analysis on whether NWP could show that such confusion would likely arise from DB's domestic conduct.  The likelihood of confusion element of a trademark infringement claim existed before *Abitron*, *see* § 1127, and remains intact after, subject to the limitation that the confusion-causing conduct must occur domestically.  *See Abitron*, 600 U.S. at 423 ("Th[e allegedly infringing] conduct . . . must create a sufficient risk of confusion, but confusion is not a separate requirement; rather, it is simply a necessary characteristic of an offending use.").

In *Abitron*, the Court "resolve[d] a Circuit split over the extraterritorial reach of the Lanham Act."  *Id.* at 417.  It applied the presumption against extraterritoriality to § 1114(1)(a) and § 1125(a)(1), and held that the trademark infringement provisions of the Act "are not extraterritorial" and "extend only to claims where the claimed infringing use in commerce is domestic."  *Id.* at 415.

The Court articulated "a two-step framework" for applying the longstanding principle that congressional legislation does not apply outside U.S. territory absent a contrary intent. *Id.* at 417 (citing *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335–36 (2016)). Under step one, courts must determine whether the statutory provision at issue is extraterritorial. *Id.* at 417–18. If the answer is no, the court proceeds to step two, and "resolves whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision." *Id.* at 418. At step two, "to prove that a claim involves a domestic application of a statute, plaintiffs must establish that the conduct relevant to the statute's focus occurred in the United States." *Id.* (emphasis and quotation omitted).

With respect to the trademark infringement provisions of the Lanham Act, *Abitron* held that they do not apply extraterritorially at step one. *Id.* at 419. At step two, the Court held that "'use in commerce' is the conduct relevant to any potential focus of [the trademark infringement provisions]," so "'use in commerce' provides the dividing line between foreign and domestic applications of [those provisions]." *Id.* at 423.

NWP's misreading of *Abitron* stems from the debate between the majority and concurring viewpoints. Although the Court unanimously agreed that the Lanham Act trademark infringement provisions do not apply extraterritorially, several Justices disagreed on what separates a permissible domestic application from an impermissible one at step two. *Id.* at 424. In her concurrence, Justice Sotomayor reasoned that the focus of § 1114(1)(a) and § 1125(a)(1) is consumer confusion, so they encompass infringement likely to cause confusion domestically, even where the infringing conduct happened

entirely abroad.  *Id.* at 432, 437 (Sotomayor, J., concurring in the judgment).  The majority, however, reasoned that the "ultimate question regarding permissible domestic application turns on the location of the conduct relevant to the focus" of the statutory provision, and held that the conduct relevant to any potential focus of the trademark infringement provisions "is infringing use in commerce." *Id.* at 422; *see also id.* at 424 (reasoning that the concurrence's "focus-only" approach "would give the Lanham Act an untenably broad reach").

In other words, the majority held that a domestic likelihood of confusion alone could not be the basis for a trademark infringement claim.  Only a domestic use in commerce causing a likelihood of confusion is within the scope of the Lanham Act's trademark infringement provisions. *See id.* at 424.  But this does not, as NWP argues, give rise to the inference that confusion anywhere in the world will do, or that a likelihood of confusion among U.S. consumers is irrelevant or not required.  In fact, in the ordinary case, the likelihood of confusion will necessarily be domestic in nature, because the confusion must be caused by a stateside use in commerce. *See id.* at 422–23 ("[C]onfusion . . . is simply a necessary characteristic of an offending use.").  The district court's focus on confusion among U.S. consumers was thus a proper analytical response to *Abitron*.

Here, the district court found that DB's "conduct in the United States is limited to manufacturing, bottling, labeling, and transporting its Nature's Day branded supplements."  As the Court noted in *Abitron*, the Lanham Act defines "use in commerce" as "'the bona fide use of a mark in the ordinary course of trade,' where the mark serves to 'identify and distinguish [the mark user's] goods . . . and to indicate the

source of the goods.'" *Id.* at 428 (alterations in original) (citing § 1127). A mark is "deemed to be in use in commerce on goods when it is placed in any manner on the goods . . . and the goods are sold *or transported* in commerce." § 1127 (emphasis added). Because transport meets § 1127's definition of "use in commerce," the district court properly concluded that DB's commercial uses of the mark included domestic conduct to which liability could attach. Stated differently, although the record evidence shows exclusively foreign sales, NWP's claims do not fail at the extraterritoriality threshold given the evidence of domestic transport.

We thus affirm the district court's conclusion that, in the context of an extraterritoriality analysis under *Abitron*, a mark is used in commerce when "it is placed in any manner on . . . goods . . . and the goods are sold or transported in commerce." § 1127. Because "transport[]" is included in § 1127—the statutory provision defining "use in commerce" cited in *Abitron*—we need not elaborate on other circumstances that may constitute a "use in commerce" for extraterritoriality purposes. *See Abitron*, 600 U.S. at 428 n.6 (acknowledging that Justice Jackson's concurrence "proposed a further elaboration of 'use in commerce,'" but finding "no occasion to address the precise contours of that phrase" in the majority opinion); *id.* at 430 (Jackson, J., concurring) (citing § 1127 and proposing that a "use in commerce . . . can occur wherever the mark serves its source-identifying function"); *see also LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1127 (9th Cir. 2024) ("The Lanham Act's 'use in commerce' requirement is equivalent to its 'in connection with' goods and services requirement." (citing *La Quinta Worldwide*

*LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 n.1 (9th Cir. 2014))).

In sum, the district court properly interpreted *Abitron* and applied it for the limited purpose of identifying which of DB's activities involving the Nature's Day mark were actionable under the Act.  *Abitron* did not change, and the district court did not interpret it as changing, the legal standard for the likelihood of consumer confusion analysis. *See Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, 99 F.4th 1150, 1164–65 (10th Cir. 2024) ("[L]ikelihood of confusion was already an essential element for any actionable Lanham Act trademark-infringement claim, and the multi-factor test for likelihood of confusion [in the Tenth Circuit] remains unchanged [after *Abitron*].").

## B.  Likelihood of Confusion

The district court did not err in finding that there was no genuine factual dispute "that [DB's] use of the Nature's Day mark for its transport in commerce is not likely to cause consumer confusion."  In determining whether there is a likelihood of consumer confusion, we apply the *Sleekcraft* factors, which consider: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co.*, 828 F.3d at 1106.

"The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a 'rote checklist.'" *Id.* (quoting *Rearden*, 683 F.3d at 1209).  "A determination may rest on only those factors that are most pertinent to the particular case before [us], and other variables besides the

enumerated factors should also be taken into account based on the particular circumstances." *Id.* (quoting *Rearden*, 683 F.3d at 1209).

Here, the factor most pertinent in determining the likelihood of consumer confusion is the marketing channels used. In analyzing marketing channel convergence, we consider "how the parties advertise and market their products" and whether "the general class of . . . purchasers exposed to the products overlap." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (quoting *Sleekcraft*, 599 F.2d at 353). Even "where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

There is no evidence that Nature's Way and Nature's Day products are marketed or sold in overlapping marketing channels. NWP markets and sells Nature's Way products in all fifty states, but DB does not sell Nature's Day products to consumers on U.S. soil or through U.S. e-commerce platforms, and does not market the brand in the U.S., "including through Doctor's Best's websites and social media accounts."

NWP cites to a declaration from a DB sales executive stating that DB intends to use e-commerce platforms to sell Nature's Day goods in Asia, to argue that we must draw the reasonable inference that those "e-commerce platforms will be available in the [U.S.], as websites are generally available worldwide." But that same declaration states that DB "has not sold and does not intend to sell [Nature's Day]

supplements through [U.S.] brick-and-mortar or e-commerce platforms," and "has not advertised or marketed, and does not intend to advertise or market, [Nature's Day] supplements in the [U.S], including through [DB's] websites and social media accounts." NWP may not create a dispute over this evidentiary statement with assertions of "mere speculation." *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (superseded by statute on other grounds).

Given the undisputed facts, the marketing channels factor is the *Sleekcraft* factor that best integrates *Abitron*'s bar on extraterritorial applications of the relevant provisions into our longstanding trademark infringement framework. Although DB's domestic transport of the Nature's Day supplements brings NWP's claim within the territorial scope of the Lanham Act, given the record in this case, a reasonable jury could not conclude that consumer confusion is likely, in large part because there is no material overlap in the marketing channels used to promote Nature's Way and Nature's Day products.[3]

Further, in light of the summary judgment record, a rational jury could not find "a strong possibility of expansion into competing markets." *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (emphasis and quotation omitted). With regard to its future plans, DB presented evidence that it "does not intend to sell Nature's Day [s]upplements in brick-and-mortar stores" or to "end consumers in the United States" through any means. NWP

---

[3] Although the non-consumer-facing domestic transport ultimately cannot support liability here, we do not foreclose the possibility that there may be unique circumstances where transport alone in the U.S. may possibly cause consumer confusion.

points to the uncontested evidence that DB manufactures Nature's Day products in the U.S., is seeking a U.S. trademark registration, and the products are labelled in English with the disclaimers required by U.S. law. While these facts support the inference that DB could easily begin selling Nature's Day products in the U.S., a rational jury could not find a strong possibility of expansion into the U.S. market given DB's undisputed evidence of its foreign marketing and business intentions.

One of DB's executives filed a declaration explaining that: (1) DB's supplements are manufactured in the U.S. and labeled in English because DB believes that U.S. products are perceived as high-quality and safe by foreign consumers; and (2) DB uses U.S.-regulatory-compliant labels because U.S. law requires such for U.S. manufactured goods, regardless of where the end user is located. NWP could have sought to depose that witness during discovery, but did not. Thus, on this record, a reasonable jury could not conclude that DB's stated reason for the American appearance of its Nature's Day supplements is false, nor could a rational jury find that DB's express intention to market and sell the products solely abroad is disingenuous. Even drawing all rational inferences in NWP's favor, NWP has not raised a genuine issue of material fact as to the likelihood of expansion. And because the record raises no genuine issues of material fact as to (1) overlapping marketing channels or (2) likely expansion into the U.S. market, no reasonable jury could find a likelihood of consumer confusion in this case.[4]

---

[4] In addition to the marketing channels and expansion factors, the district court also relied on the lack of evidence of actual confusion amongst consumers in finding no genuine issue of material fact as to the likelihood of confusion. We need not address this factor because we

Despite the district court's narrow ruling, NWP maintains that the district court erred in concluding that five of the eight factors were "less relevant in light of the absence of any sales, advertising, or other interaction with United States consumers and the fact that [DB] advertises and sells only to consumers abroad." In NWP's view, this was problematic because the factors the district court found "less relevant" were the factors that favored NWP. We assume without deciding that NWP raised genuine issues of material fact that the Nature's Way mark is commercially strong; Nature's Way and Nature's Day products are related goods; the marks are facially similar; and consumers of nutritional supplements are careless buyers. *See JL Beverage Co.*, 828 F.3d at 1106 (listing the eight *Sleekcraft* factors).[5] But we have long recognized that "the relative importance of each individual factor [is] case-specific," and these factors are indeed largely irrelevant to determining the likelihood of consumer confusion in this case. *Brookfield Commc'ns*, 174 F.3d at 1054.

Regardless of how easily confusable the products and marks are, given the summary judgment record, no reasonable jury could find a likelihood of consumer

---

conclude that the absence of evidence of (1) overlapping marketing channels or (2) a strong possibility of expansion is sufficient to support the district court's ruling on the likelihood of consumer confusion.

[5] Because NWP failed to produce any non-speculative evidence that DB intentionally copied its mark, there is no genuine issue of material fact as to DB's permissible motives as the alleged infringer, which generally cuts against a likelihood of confusion. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1111–12 (9th Cir. 2016). But, like the other factors the district court found unimportant, DB's motives are largely irrelevant, as it represents that it intends to only market and sell Nature's Day supplements in Asian markets.

confusion because DB's Nature's Day products do not reach consumers domestically. *See id.* Because there is no genuine issue of material fact that (1) Nature's Way and Nature's Day products are not advertised or sold in overlapping marketing channels and (2) there is not a strong possibility that they will be in the future, it is unlikely that a consumer will ever encounter both products in a single commercial setting. Therefore, although the marks are hypothetically confusable, the likelihood of consumer confusion, given the existing record, is nonexistent, because the marks do not appear in the same marketplace. *Cf. Rearden*, 683 F.3d at 1209.

In sum, applying the *Sleekcraft* factors flexibly and in light of the extraterritorial aspects of this case, we agree with the district court that there is no genuine issue of material fact as to the likelihood of consumer confusion on the existing record. Even assuming that the Nature's Way mark is strong, and that the goods and marks here are abstractly similar, related, and subject to a low degree of consumer care, a reasonable jury could not rationally find a likelihood of consumer confusion because Nature's Way and Nature's Day products are not marketed or sold in competing markets.

## C.  Rule 56(d)

Rule 56(d) is "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)); Fed. R. Civ. P. 56(d). District courts have discretion to deny a Rule 56(d) motion when the nonmovant has failed to diligently pursue discovery. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002). The district court did

not abuse its discretion in denying NWP's Rule 56(d) motion.

At the time NWP filed its Rule 56(d) motion, litigation had been ongoing for over nine months, the evidence at the center of DB's summary judgment motion had been in the record for over five months, and the close of all discovery was less than four months away. Nonetheless, NWP had not made a single discovery request. Further, DB provided NWP notice of the impending motion nearly a month in advance of filing, and NWP stipulated to a briefing schedule despite taking no steps to elicit the facts that it believed were necessary to oppose the motion. We thus agree with the district court that NWP did not act diligently.

Nor did the district court abuse its discretion by denying deferral and granting DB's motion prior to the date set for the close of discovery in the court's scheduling order. Unlike cases where we have found an abuse of discretion because the district court granted summary judgment before the nonmoving party had "any realistic opportunity to pursue discovery," here, NWP had five months to conduct discovery prior to requesting deferral and did not do so. *See, e.g.*, *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773–74 (9th Cir. 2003).

For all the above reasons, the district court's judgment is

**AFFIRMED.**

IKUTA, J., specially concurring

I concur in the result.  I write separately to provide my understanding regarding the application of *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412 (2023), and the likelihood of domestic consumer confusion. Because there was no domestic use of the Nature's Day mark in commerce that caused consumer confusion, the district court did not err in granting summary judgment to Doctor's Best, Inc. (Doctor's Best).

The Lanham Act provides that there is trademark infringement if a person "use[s] in commerce" any "colorable imitation of a registered mark in connection with" a sale or other conduct.  15 U.S.C. § 1114(1)(a).   The Lanham Act also provides that "a mark shall be deemed to be in use in commerce" if the goods which display the mark "are sold or transported in commerce." *Id.* § 1127. *Abitron* held that § 1114(1)(a) does not apply extraterritorially.  600 U.S. at 415.  Instead, this provision "extend[s] only to claims where the claimed infringing use in commerce is domestic." *Id.*[1]   For a trademark infringement claim to be actionable, the domestic use in commerce must create "a sufficient risk of confusion," which is a "necessary characteristic of an offending use." *Id.* at 423.  In short, to succeed on a Lanham Act claim under § 1114(1)(a), a plaintiff must show both (1) use in domestic commerce, and (2) a sufficient risk of consumer confusion.

Here, the parties agree that Nature's Day branded supplements were used in domestic commerce, because Doctor's Best domestically transported its Nature's Day branded supplements.  Because transportation is a "use in

---

[1] The same rule applies to § 1125(a)(1), which is not applicable here.

commerce" under the Lanham Act, 15 U.S.C. § 1127, Doctor's Best used the Nature's Day mark in commerce.

Therefore, we turn to the second prong of the Lanham Act analysis, whether there is a sufficient risk of consumer confusion. Nature's Way Products (NWP) argues that if Nature's Day domestically used an infringing mark "in commerce," then there can be a Lanham Act violation if there is consumer confusion abroad, even if there is no consumer confusion in the United States.

This is contrary to *Abitron*. 600 U.S. at 423. *Abitron* explained that consumer confusion is a "necessary characteristic of an offending use." *Id.* For a Lanham Act claim to be actionable, the offending use must occur domestically *Id.* at 415. Because the offending use must be domestic, it follows that the consumer confusion resulting from this use likewise must be domestic. *Id.* at 422–23. That is, the Lanham Act only applies where there is a domestic use in commerce that would cause a domestic likelihood of confusion. Accordingly, the possibility of consumer confusion based on marketing or sales abroad is irrelevant to this case.

NWP also argues that there is evidence of domestic consumer confusion. This argument fails. There is no evidence in the record to suggest that domestic consumers would encounter the "Nature's Day" mark during transport. Moreover, Doctor's Best presented uncontested evidence that it has not sold, marketed, or advertised Nature's Day supplements to end consumers in the United States and has no plans to do so in the future. Because there is no evidence that domestic consumers would encounter the "Nature's Day" mark during transport, domestic consumers necessarily cannot confuse Doctor's Best's "Nature's Day"

products with NWP's "Nature's Way" products.  Thus, there is no genuine issue of material fact that Doctor's Best's domestic conduct causes a likelihood of confusion for domestic consumers.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999).

In sum, Doctor's Best's transport of Nature's Day supplements in the United States constitutes a domestic use in commerce.  But the evidence in the record does not create a genuine issue of material fact as to whether this transport causes a likelihood of domestic consumer confusion.  And, under *Abitron*, we do not consider extraterritorial consumer confusion.  Accordingly, the district court did not err in granting summary judgment in favor of Doctor's Best.